_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

Case Nos. 20-2187 (L), 20-2244

APPALACHIAN VOICES, *et al.*,

Petitioners,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, *et al.*,

Respondents.

_____

**On Petitions for Review of a Final Rule
of the Environmental Protection Agency**

_____

## UTILITY WATER ACT GROUP'S
## <u>UNOPPOSED MOTION FOR LEAVE TO INTERVENE</u>

Under Rule 15(d) of the Federal Rules of Appellate Procedure ("FRAP"), the Utility Water Act Group ("UWAG") hereby moves for leave to intervene in Case Nos. 20-2187 (L), 20-2244, and all other petitions for review of the same rule that are subsequently consolidated with this case. UWAG seeks to support the Respondents U.S. Environmental Protection Agency ("EPA") and Andrew Wheeler, in his official capacity as Administrator of EPA. Undersigned counsel has contacted counsel for the parties and informed them of the substance of this motion. Respondents take no position on the motion, and Petitioners do not oppose it. In support of this motion, UWAG states the following.

This litigation consolidates petitions for review of the "2020 ELG Reconsideration Rule" promulgated by EPA. 85 Fed. Reg. 64,650 (Oct. 13, 2020). In this rule, EPA reconsidered and revised certain effluent limitations guidelines ("ELGs") regulating wastewater generated by the steam electric power industry under the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.* Since 2010, EPA has been nearly continuously engaged in a sequential series of three interrelated rulemakings to promulgate and revise these ELGs:

- The 2015 ELG Rule, 80 Fed. Reg. 67,838 (Nov. 3, 2015);

- The 2017 ELG Postponement Rule, 82 Fed. Reg. 43,494 (Sept. 18, 2017); and

- The 2020 ELG Reconsideration Rule.

UWAG, whose members belong to the regulated industry, has participated in each of the foregoing rulemakings and litigation arising out of them as either a petitioner or intervenor supporting EPA.  In connection with ELG-related litigation, UWAG has been granted intervention by the D.C. Circuit, the Fifth Circuit, the United States District Court for the District of Arizona, and the United States District Court for the District of Columbia.  *E.g.*, Order Granting Intervention, *Clean Water Action v. EPA*, No. 17-1216, Dkt. 1712592 (D.C. Cir. Jan. 11, 2018); Order Granting Intervention, *Sw. Elec. Power Co v. EPA*, No. 15-60821, Dkt. 00513325152 (5th Cir. Dec. 30, 2015); Order Granting Intervention, *Ctr. for Biological Diversity v. Pruitt*, No. 4:18-cv-00050-JAS, Dkt. 26  (D. Az. June 6, 2018); Order Granting Intervention, *Clean Water Action v. Pruitt*, No. 17-cv-00817, Dkt. 33 (D.D.C. Aug. 17, 2018).

The 2020 ELG Reconsideration Rule revises limited aspects of the ELGs originally promulgated in the 2015 ELG Rule, including certain aspects challenged by UWAG in consolidated litigation in the Fifth Circuit.  In that litigation, UWAG argued that, among other things, EPA's rulemaking lacked transparency because key information was withheld from public view and several of EPA's conclusions were technologically and economically infeasible.  Subsequently, UWAG administratively petitioned EPA to reconsider those parts of its 2015 rulemaking at issue in UWAG's Fifth Circuit litigation, and EPA granted the administrative petition.  82 Fed. Reg. 43,494, 43,495 (Sept. 18, 2017).  Since then, UWAG's legal claims have been held in

abeyance by the Fifth Circuit, pending the outcome of the 2020 ELG Reconsideration Rule at issue here.

Appalachian Voices, Good Stewards of Rockingham, Stokes County Branch of the NAACP, Winyah Rivers Alliance, Clean Water Action, Environmental Integrity Project, Sierra Club, Waterkeeper Alliance, Inc., Natural Resources Defense Council, Inc., Center for Biological Diversity, PennEnvironment, Inc., Chesapeake Climate Action Network, and Prairie Rivers Network ("Environmental Petitioners") seek to challenge the 2020 ELG Reconsideration Rule. The Rule and Environmental Petitioners' challenge to the Rule have a direct impact on UWAG and its members. UWAG therefore seeks to intervene to defend it. This defense will include but not be limited to seeking transfer of these consolidated cases to the Fifth Circuit, where all other challenges to EPA's steam electric ELGs have been transferred and litigated since 2015. UWAG also wishes to oppose Environmental Petitioners' claims and to offer a perspective different from EPA or any other parties who may subsequently petition for review of the 2020 ELG Reconsideration Rule and/or seek to intervene in these cases.

## ARGUMENT

UWAG meets the standards for intervention. As mentioned, UWAG has been granted leave to intervene in all cases before other federal courts concerning EPA's steam electric ELGs since 2015. The same treatment is appropriate here.

## I.    Standard for Intervention Under FRAP 15(d)

Rule 15(d) of the FRAP imposes no specific requirements on a party seeking to intervene other than that its motion must be filed within 30 days of the petition for review and explain its interest in the proceeding and the grounds for intervention.  The Supreme Court has identified two considerations for determining whether intervention is warranted under FRAP 15(d):  (1) "the statutory design of the act;" and (2) "the policies underlying intervention in the trial courts pursuant to" Rule 24 of the Federal Rules of Civil Procedure ("FRCP").  *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., AFL-CIO, Local 283 v. Scofield* ("*Scofield*"), 382 U.S. 205, 210, 216 n.10 (1965).

## II.    Grounds for Intervention

### a.  UWAG's Motion is Timely

FRAP 15(d) provides that motions for leave to intervene "must be filed within 30 days after the petition for review is filed…."  UWAG meets this requirement.  The petitions in this case were filed on November 2, 2020, and this motion is being filed on December 2, 2020.  This motion also is being filed prior to the deadline for EPA to file the administrative record, prior to the entry of any briefing schedule, and, indeed, over 80 days prior to expiration of the 120-day deadline for parties to file other petitions for review of the 2020 ELG Reconsideration Rule.  *See* Order (Nov. 2, 2020), No. 20-2187, Dkt. 5 (requiring administrative record be filed by Dec. 14, 2020); 33 U.S.C. § 1369(b)(1) (giving petitioners until Feb. 24, 2021, to seek review of Reconsideration Rule).

b. UWAG's Interest in this Case

FRAP 15(d) also requires a "concise statement of the interest of the moving party." UWAG represents the members of the industry that will be required to comply with the Reconsideration Rule. UWAG is a voluntary, non-profit, unincorporated group of 138 individual energy companies and three national trade associations of energy companies: the Edison Electric Institute ("EEI"), the National Rural Electric Cooperative Association ("NRECA"), and the American Public Power Association ("APPA").

The individual energy companies operate power plants and other facilities that generate, transmit, and distribute electricity to residential, commercial, industrial, and institutional customers.

EEI is the association of U.S. shareholder-owned energy companies, international affiliates, and industry associates. EEI members serve 220 million Americans in all 50 states, approximately 70 percent of all retail electricity customers in the country.

NRECA is the national trade association representing nearly 900 local electric cooperatives and other rural electric utilities. Not-for-profit electric cooperatives power 42 million Americans across 56 percent of the nation's landscape.

APPA is the voice of not-for-profit, community-owned utilities that power 2,000 towns and cities nationwide. APPA represents public power before the Federal Government to protect the interests of the more than 49 million people that public

power utilities serve and the 93,000 people they employ. APPA advocates and advises on electricity policy, technology, trends, training, and operations. Its members strengthen their communities by providing superior service, engaging citizens, and instilling pride in community-owned power.

UWAG's purpose is to participate on behalf of its members in EPA's rulemakings under the CWA and in litigation arising from those rulemakings. UWAG participated in EPA's development of the 2020 ELG Reconsideration Rule, submitting written data, views, and arguments in accordance with § 553(c) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq.* UWAG also participated in the rulemaking for the 2015 ELG Rule, which the Reconsideration Rule revises, as well as all subsequent litigation and administrative proceedings related to the same. In addition to its litigation in the Fifth Circuit challenging the 2015 ELG Rule, UWAG administratively petitioned EPA under 5 U.S.C. § 553(e) to reconsider, among other things, the effluent limitations prescribed in the 2015 ELG Rule for two wastestreams: (1) flue gas desulfurization wastewater ("FGDW") and (2) bottom ash transport water ("BATW").[1] The 2020 ELG Reconsideration Rule at issue here makes certain revisions to those limitations, affecting UWAG's members.

---

[1] The Small Business Administration submitted a similar petition for administrative reconsideration.

      c.  The Statutory Design of the APA and the CWA Encourage the Participation of Interested Persons in Any Review of the Reconsideration Rule

The design of two statutes is relevant to the Court's determination of whether UWAG's intervention is warranted under FRAP 15(d) in these proceedings: the APA and the CWA. *Scofield*, 382 U.S. at 210, 216 n.10.

Section 553 of the APA generally requires federal agencies to publish notices of proposed rulemakings in the *Federal Register*, to provide "interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments" and, "[a]fter consideration of the relevant matter presented," to "incorporate in the rules adopted a concise general statement of their basis and purpose." 5 U.S.C. §§ 553(b)-(c). These provisions "were designed to assure fairness and mature consideration of rules of general application." *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 764 (1969) (citing legislative history).

The CWA is similarly designed to encourage interested persons to participate in the rulemaking process, including reviews of promulgated rules. The CWA provides that review of EPA's promulgation of ELGs, in particular, "may be had by any interested person … which is directly affected by such action." 33 U.S.C. § 1369(b)(1). Industry associations representing the interests of the industry that will have to comply with new ELGs and "suffer adverse effects to their economic interests" in the process are "'interested persons' under [CWA] section 509(b)(1)." *Am. Mining Cong. v. EPA*, 965 F.2d 759, 763 (9th Cir. 1992).

This Court and others have recognized these basic principles and permitted UWAG to intervene in CWA rulemaking challenges applicable to the steam electric power generation industry. Order, *Cooling Water Intake Structure Coalition v. EPA*, No. 14-1931(L) (4th Cir. Oct. 17, 2014), ECF No. 54 (granting UWAG's motion to intervene in proceedings challenging cooling water intake structure requirements for existing facilities); *see also* Order, *Sw. Elec. Power Co.* (5th Cir. Dec. 30, 2015), ECF No. 00513325152 (granting UWAG intervention in all cases for review of the 2015 ELG Rule); Order, *Clean Water Action v. Pruitt*, No. 17-1216 (D.C. Cir. Jan. 11, 2018), ECF No. 1712592 (granting UWAG's motion to intervene in challenge to 2017 ELG Postponement Rule); Order, *In re EPA and Dep't of Defense, Final Rule: Clean Water Rule: Definition of "Waters of the United States,"* No. 15-3751(L) (6th Cir. Sep. 16, 2015), ECF No. 23-2 (granting UWAG's motion to intervene in proceedings challenging new definition of "Waters of the United States" under the CWA).

The design of the APA and CWA support UWAG's intervention in the proceedings here. These statutes encourage the participation of the most interested members of the public in any challenge to the 2020 ELG Reconsideration Rule. UWAG represents the interests of the steam electric generation industry, the industry directly regulated and affected by the 2020 ELG Reconsideration Rule. UWAG participated substantially in the rulemaking process. It commented, among other things, that the 2020 ELG Reconsideration Rule was necessary to provide appropriate limits for FGD wastewater and BATW, as well as to establish a subcategory for units

intending to retire or convert to a fuel other than coal. UWAG Comments at 2-5 (EPA-HQ-OW-2009-0819-8456).

EPA's rule accounts for newer pollution control technologies and imposes certain limitations that are more stringent than previously established limits, while taking a phased approach that allows grid stability as the electric utility industry transitions to new energy sources. For example, EPA's establishment of subcategory for plants that commit to permanently retire coal units by 2028 recognized the industry's interests in transitioning to new energy sources, noting a North American Electric Reliability Corporation report that found that "reliability problems could occur" on the electric grid if "retirements happen faster than the system can respond," and the concern of electric utilities "that the well-planned construction of new generation capacity and orderly retirement of older plants are vital to ensuring electricity reliability." 85 Fed. Reg. at 64,681.

UWAG has standing to petition for review of the 2020 ELG Reconsideration Rule in its own right under the APA and the CWA. Indeed, in the Fifth Circuit, UWAG challenged those aspects of the 2015 ELG Rule that EPA has now revised in the 2020 ELG Reconsideration Rule. UWAG, therefore, should be permitted to intervene in these proceedings to support the 2020 ELG Reconsideration Rule that UWAG petitioned EPA to promulgate.

d. The Policies Underlying Intervention Pursuant to FRCP 24 Encourage
UWAG's Intervention in Any Review of the Reconsideration Rule

While the requirements of FRCP 24 do not apply directly to petitions for review

of agency actions under FRAP 15(d), courts have recognized that the policies

underlying FRCP 24 are relevant to resolving the question of intervention in the federal

courts of appeals. *E.g.*, *Scofield*, 382 U.S. at 216 n.10. The plain language of FRCP 24

establishes two bases of intervention that are relevant here: intervention of right and

permissive intervention. FRCP 24(a)(2), (b)(1). Because UWAG satisfies the standards

for intervention on both bases, this motion for leave to intervene should be granted.

i. Intervention of right

FRCP 24(a)(2) provides for intervention as of right if (1) the motion is timely

made, (2) the applicant claims an interest relating to the property or transaction that is

the subject of the action, (3) the interest could be impaired or impeded as a result of

the litigation, and (4) existing parties do not adequately represent the applicant's

interests. *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999). UWAG

satisfies each of these elements, as explained below.

First, as explained above, UWAG's motion to intervene is timely.

Second, as also explained above, UWAG has a direct, substantial, and legally

protectable interest in these proceedings. The subject of this case is EPA's revision of

certain effluent limitations in the 2015 ELG Rule, which applies to UWAG's members.

Environmental Petitioners challenge these revisions. In general, "[l]iberal intervention

is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (internal citation omitted); *J.P. Stevens & Co. v. NLRB*, 388 F.2d 892, 895 (4th Cir. 1967); *see also United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1291-92 (D.C. Cir. 1980) (citations omitted) ("intervention aims to protect interests ... 'of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment.'").

Third, UWAG's interest could be impaired or impeded as a result of this litigation. For purposes of FRCP 24(a)(2), an "interest" must be, above all else, "'a significantly protectable interest.'" *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991) (internal citation omitted). In determining whether an action threatens to impair an intervenor-applicant's interests, a reviewing court is to look at the "practical consequences" of denying intervention. *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977) (granting intervention by industry groups in litigation concerning ELGs).

The practical consequence here is that Environmental Petitioners seek vacatur of the 2020 ELG Reconsideration Rule's revision of certain effluent limitations in the 2015 ELG Rule. *See* Docketing Statement, *Appalachian Voices v. EPA*, No. 20-2187, Dkt. 7 at 2 (4th Cir. Nov. 16, 2020) (seeking "vacatur and remand" of those

limitations).[2]  This would be directly contrary to UWAG's interests because the 2015

ELG Rule's previous effluent limitations (that remain subject to UWAG's petition for

review in the Fifth Circuit) could be reinstated.  That could lead to irreversible and

wasted expenditures as a result of industry members potentially being forced to comply

with the reinstated provisions of the 2015 ELG Rule by their applicability dates, which

may be impossible for some to do for the reasons explained in UWAG's challenge in

the Fifth Circuit.[3]  Denying UWAG intervention here, therefore, would deprive a

collection of industry members directly affected by both the 2015 ELG Rule and the

ELG Reconsideration Rule a chance to defend the latter and oppose relief that would

result in the inappropriate reinstatement of the rule they are currently challenging.

Finally, the existing parties are also inadequate to represent UWAG's interests in

these proceedings.  To satisfy the fourth prong of FRCP 24(a)(2), a proposed intervenor

must show that the existing parties do not adequately represent its interests.  The

Supreme Court has held that this requirement is "minimal" and is satisfied if the

---

[2] Petitioners in case number 20-2244 have yet to file their docketing statement, but presumably seek similar relief.

[3] Such economic injuries alone are grounds for intervention of right.  *Feller*, 802 F.2d at 730 (allowing intervention of right based on economic interests); *JLS, Inc. v. Pub. Serv. Comm'n of W. Va.*, 321 F. App'x 286, 290 (4th Cir. 2009) (same) (citing *Utahns for Better Transp. v. U.S. DOT*, 295 F.3d 1111, 1115 (10th Cir. 2002)).

proposed intervenor shows that representation of his interest "may be" inadequate. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538. n.10 (1972).

The minimal burden is met here. Environmental Petitioners' interests are directly contrary to UWAG's. Likewise, EPA does not represent the interests of UWAG. UWAG offers the industry's unique perspective in support of the 2020 ELG Reconsideration Rule.

Courts have long recognized that government agencies like EPA do not adequately represent the interests of private entities like UWAG. *See, e.g.*, *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 314 (D.C. Cir. 2015) (reversing district court where beneficiary of divided agency decision was denied right to intervene in suit challenging it); *City of Chicago v. FEMA*, 660 F.3d 980, 985-86 (7th Cir. 2011) (recognizing that intervention of right is appropriate "when an original party does not advance a ground that if upheld by the court would confer a tangible benefit on an intervenor who wants to litigate that ground") (collecting and discussing cases). Further, EPA is primarily motivated to defend its regulatory programs and practices and, in so doing, may advance positions or choose litigation strategies, such as settling the case, that are inconsistent with UWAG's interests. *See JLS, Inc.*, 321 F. App'x at 291 (noting that an agency could settle a case in a manner that could harm intervenor's interests).

EPA has no duty to represent UWAG's interests. Rather, its duties are defined by statute and guided by administrative and bureaucratic interests. Those interests are

different from UWAG's specific interest in the 2020 ELG Reconsideration Rule. As a consequence, UWAG may raise legal arguments that EPA is unlikely or unwilling to make. *Id.* (finding that intervenor raised material points in the case that agency did not). Thus, it cannot be said that EPA adequately represents UWAG's interests.

In light of the foregoing, UWAG should be permitted to intervene in this proceeding as of right. UWAG's motion to intervene is timely, UWAG has a direct, substantial, and legally protectable interest in the proceeding, disposal of the case would impair or impede UWAG's ability to protect that interest, and no existing party adequately represents UWAG's interest.

ii. Permissive intervention

Apart from the reasons UWAG should be allowed to intervene as of right, UWAG also satisfies the test for permissive intervention under FRCP 24(b):

> On timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact…. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

The decision to grant or deny permissive intervention "lies within the sound discretion of the … court." *Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003) (internal citation omitted).

UWAG satisfies this test. As noted above, the motion to intervene is timely and will not delay the proceedings. The Court has jurisdiction under 33 U.S.C. § 1369(b)(1)(E), and UWAG's arguments go to questions of fact and law in common with the petitions for review. For example, if granted intervention, UWAG intends to file a motion to transfer this case to the Fifth Circuit, under 28 U.S.C. § 2112(a)(5), because the 2020 ELG Reconsideration Rule is considered part of the "same order" as the 2015 ELG Rule for purposes of that statute. *See, e.g.*, *BASF Wyandotte Corp. v. Costle*, 582 F.2d 108, 112 (1st Cir. 1978); *ACLU v. FCC*, 486 F.2d 411, 414 (D.C. Cir. 1973).[4] And no party will be prejudiced by UWAG's participation. Thus, while UWAG should be allowed to intervene as a matter of right, UWAG also readily satisfies the test for permissive intervention.

## CONCLUSION

For the foregoing reasons, UWAG respectfully requests that the Court grant this motion for intervention as of right or, in the alternative, for permissive intervention in the consolidated cases and any other petitions for review of the 2020 ELG Reconsideration Rule that may be consolidated with them.

---

[4] That statute was the basis for initially consolidating the present petitions in this Court, by order of the Judicial Panel on Multidistrict Litigation. The statute was likewise the basis for all challenges to the 2015 ELG Rule and to the 2017 ELG Postponement Rule to be consolidated and decided in the Fifth Circuit.

Respectfully submitted,

/s/ Harry M. Johnson, III
Harry M. Johnson, III
Timothy L. McHugh
   HUNTON ANDREWS KURTH LLP
   Riverfront Plaza, East Tower
   951 East Byrd Street
   Richmond, Virginia  23219-4074
   (804) 788-8200

Kristy A. Niehaus Bulleit
Andrew J. Turner
   HUNTON ANDREWS KURTH LLP
   2200 Pennsylvania Avenue, NW
   Washington, DC  20037
   (202) 955-1500

Counsel for Utility Water Act Group

Dated:  December 2, 2020

## **CERTIFICATE OF SERVICE**

I certify that on December 2, 2020, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

## **CERTIFICATE OF COMPLIANCE**

1. This motion complies with the type-volume limitation of FRAP 27(d)(2) because this motion contains 3,515 words, excluding the parts of the motion exempted by FRAP 27(d)(2) and FRAP 27(a)(2)(B).

2. This motion complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in Garamond 14-point font.


Dated:  December 2, 2020          /s/ Harry M. Johnson, III

                                 Harry M. Johnson, III