# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

APPALACHIAN VOICES, GOOD
STEWARDS OF ROCKINGHAM,
STOKES COUNTY BRANCH OF THE
NAACP, and WINYAH RIVERS
ALLIANCE,

  *Petitioners,*

  v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, and ANDREW
WHEELER, in his official capacity as
Administrator of the United States
Environmental Protection Agency,

  *Respondents, and*

UTILITY WATER ACT GROUP;
ELECTRIC ENERGY, INC.; COLETO
CREEK POWER, LLC; DYNEGY MIAMI
FORT, LLC; DYNEGY MIDWEST
GENERATION, LLC; DYNEGY
ZIMMER, LLC; ILLINOIS POWER
GENERATING COMPANY; ILLINOIS
POWER RESOURCES GENERATING,
LLC; and KINCAID GENERATION,
LLC,

  *Respondent-Intervenors.*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 20-2187(L)
*consolidated with* No. 20-2244

**PETITIONERS APPALACHIAN
VOICES, GOOD STEWARDS
OF ROCKINGHAM, STOKES
COUNTY BRANCH OF THE
NAACP, AND WINYAH
RIVERS ALLIANCE'S
RESPONSE IN OPPOSITION
TO INTERVENOR UTILITY
WATER ACT GROUP'S
MOTION TO TRANSFER**

## INTRODUCTION

Intervenor the Utility Water Act Group ("UWAG") cannot commandeer this case and relocate it to UWAG's preferred venue.

First, as an intervenor, UWAG has voluntarily joined this Fourth Circuit litigation and must take the case as it finds it; Supreme Court precedent and a long line of subsequent cases confirm that intervenors like UWAG cannot question venue when the respondent, EPA, has accepted review in this Court.

Second, transfer under 28 U.S.C. § 2112(a)(5) (mandating transfer of petitions concerning the "same order") is unavailable because this litigation concerns a different regulation, arising out of a different proceeding with a different record, setting different effluent limits than the rules challenged years ago in the Fifth Circuit. The interests of justice and convenience also weigh in favor of the litigation remaining in the Fourth Circuit, where the *Appalachian Voices* Petitioners ("Community Groups") work and where the harms of the this rule's weakened protections will be acutely felt. The Fifth Circuit is not a specialized tribunal, and there is no reason this Court should exercise its discretion to move this separate challenge to a new rule there—certainly not when EPA has not sought transfer itself.

Finally, transfer is inappropriate because the Fifth Circuit litigation is moot: the portions of the rule challenged in the Fifth Circuit were supplanted by the rule

1

challenged here and no longer exist.  There is no live case in that Circuit, and no cause to transfer this case to the empty shell of a mooted lawsuit.

## BACKGROUND

The Clean Water Act's sole objective is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).  To that end, Congress prohibited the discharge of pollutants from point sources into navigable waters without a permit.  *Id.* § 1311(a).  The backbones of those discharge permits are technology-based effluent limitations—numeric limits based on what available pollution control technology can achieve.

Although states generally implement these limitations in permits, EPA is responsible for setting key pollution standards, called effluent limitations, for sources like coal-fired power plants based on performance of the "best available technology economically achievable."  *Id.* §§ 1311(b)(2)(A), 1314(b).  Because technology improves over time, Congress contemplated that EPA would regularly reissue these limitations and guidelines.  *Id.*

For the category of steam electric power plants, EPA issued effluent limitation guidelines ("ELGs") in 1974, 1977, 1982, and then not again until 2015. *See* Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category, 80 Fed. Reg. 67,838, 67,840 (Nov. 3, 2015) ("2015 Rule").  The 2015 Rule for the first time set Best Available Technology

2

standards for toxic pollutants like selenium, arsenic, and mercury. *Id.* at 67,838, 67,841. EPA finalized the 2015 Rule in November 2015, and it became effective in January 2016. *Id.* at 67,838.

After a change in administrations, EPA issued a rule in 2017 delaying the compliance dates for the 2015 Rule. *See* Postponement of Certain Compliance Dates for the Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category, 82 Fed. Reg. 43,494 (Sept. 18, 2017) ("2017 Delay Rule"). The 2017 Delay Rule did not change the substantive requirements of the 2015 Rule.

In November 2019, EPA proposed a new set of power plant ELG regulations. *See* Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category, 84 Fed. Reg. 64,620 (Nov. 22, 2019). The final rule EPA issued in 2020 ("the 2020 Rule") establishes different, generally weaker protections compared to the 2015 Rule against toxic pollutants in two power plant wastewater streams: flue gas desulfurization ("FGD") wastewater (from air pollution "scrubbers") and bottom ash transport water (used to flush out coal ash from power plant boilers). *See* Steam Electric Reconsideration Rule, 85 Fed. Reg. 64,650 (Oct. 13, 2020). For FGD wastewater, EPA established new limits based on a different and lower-performing treatment technology; power plants may now discharge three times as much selenium as they could previously.

3

*Compare* 2020 Rule, *id.* at 64,717, Table 5, *with* 2015 Rule, 80 Fed. Reg. at 67,895; *see also* 85 Fed. Reg. at 64,657.  For bottom ash, plants may now discharge up to 10 percent of their wastewater under certain conditions.  85 Fed. Reg. at 64,652.  This change is based on EPA's choice of a different and less-protective operation as the basis for its bottom ash wastewater limits.  *Id.* at 64,657–58.  EPA also established new "subcategories," which will allow some plants to continue polluting without complying with the limits at all or installing modern pollution control equipment.  *Id.* at 64,652, 64,660, Table VII-1.

To issue the 2020 Rule, EPA took public comment and "updated its industry profile based on more recent data, conducted a limited information request, and collected voluntarily-provided sampling data."  Press Release, EPA, EPA Finalizes Power Plant Effluent Limitation Guidelines that Save Money and Reduce Pollution (Aug. 31, 2020), https://www.epa.gov/newsreleases/epa-finalizes-power-plant-effluent-limitation-guidelines-save-money-and-reduce.  EPA claims its new rule is based on "more affordable technologies" that have become available since it finalized the 2015 Rule.  85 Fed. Reg. at 64,651.

The Community Groups challenged the 2020 Rule in the Fourth Circuit, where they are based and where their members live.  Clean Water Action and other groups filed their petition in the D.C. Circuit.  Pursuant to 28 U.S.C. § 2112, EPA notified the Joint Panel on Multidistrict Litigation, ECF No. 9-3, which selected

the Fourth Circuit by lottery as the venue for the challenge to this action.  The D.C. Circuit case was transferred here, and the cases have been consolidated.  *See* ECF Nos. 10, 11.

On December 18, 2020, EPA filed the certified index to the administrative record in this Court.  *See* ECF No. 35-3.

## ARGUMENT

### I.    As an Intervenor, UWAG May Not Question Venue.

UWAG chose to enter this Fourth Circuit litigation and may not now move it across the country.  Supreme Court precedent bars intervenors like UWAG from objecting to venue.  *Cent. Trust Co. v. McGeorge*, 151 U.S. 129 (1894).  Many subsequent cases confirm that "[t]he intervenor cannot question venue."  7C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1918 (3d ed. 2020) ("Wright & Miller").  Accordingly, UWAG's attempt to second-guess this litigation's designated venue fails at the outset.

In *Central Trust*, a corporation had waived the objection that it was sued in the wrong district, but stockholders and creditors then intervened and objected to venue.  The Supreme Court ruled that even though the intervenors' objection was meritorious, 151 U.S. at 132–33, venue "could not be overruled at the instance of stockholders and creditors not parties to the suit as brought, but who were permitted to become such by an intervening petition."  *Id.* at 135.

The rule against intervenors' transfer motions has been applied in a long line of cases, including in this Circuit, holding that "[b]y voluntarily entering the action the intervenor has waived the privilege not to be required to engage in litigation in that forum."  7C Wright & Miller § 1918; *see, e.g.*, *Beam Laser Sys., Inc. v. Cox Commc'ns, Inc.*, 117 F. Supp. 2d 515, 517 (E.D. Va. 2000) ("as an intervenor, SeaChange may not question venue").  As the Second Circuit has held, "[v]enue is a privilege personal to a defendant in a civil suit and a person intervening on either side of the controversy may not object to improper venue."  *Trans World Airlines, Inc. v. Civil Aeronautics Bd.*, 339 F.2d 56, 63–64 (2d Cir. 1964), *cert. denied*, 382 U.S. 842 (1965).  Another court explained, "[t]he bottom line is this: By voluntarily intervening in this action, [Intervenors] invoked and acquiesced to the jurisdiction of this District Court, and thereby waived their privilege not to be required to engage in litigation in this forum."  *Defenders of Wildlife v. Bureau of Ocean Energy Mgmt., Regulation, & Enforcement*, 791 F. Supp. 2d 1158, 1175 (S.D. Ala. 2011).

Likewise, in *Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, the court traced the rule from the Supreme Court's *Central Trust* decision to the present and concluded: "[T]he intervenors cannot now question the propriety or convenience of a venue they chose to enter."  287 F. Supp. 3d 651, 661 (E.D. Tex. 2018).  This prohibition applies even when parties intervened with the express purpose of

objecting to venue. *See id.* at 658. When the intervenors in *Team Worldwide*, a patent dispute, subsequently petitioned the Federal Circuit for a writ of mandamus ordering the district court to grant their transfer motion, the Federal Circuit refused in light of the "substantial amount of authority supporting the district court's decision[.]" *In re Intex Recreation Corp.*, No. 2018-131, 2018 WL 3089215, at *2 (Fed. Cir. June 13, 2018). *See also, e.g.*, *Dexia Credit Local v. Rogan*, No. 02 C 8288, 2008 WL 4543013, at *6 (N.D. Ill. Oct. 9, 2008) (intervenors "likely have waived any objection to venue by intervening in this proceeding"); *Recht v. Metro Goldwyn Mayer Studio, Inc.*, No. 08-CV-250, 2008 WL 4460379, at *2 (W.D. Wis. Sept. 29, 2008) ("Even if she were allowed to intervene, Ms. Recht would have no standing to question the venue in this case."); *Commonwealth Edison Co. v. Train*, 71 F.R.D. 391, 394 (N.D. Ill. 1976) ("When a party seeks to enter pending litigation as an intervenor, he enters the litigation subject to the venue which already exists.").

The rule against intervenors protesting venue applies equally to intervenors claiming improper venue and those requesting transfer for convenience or in the interests of justice. *See Beam Laser Sys.*, 117 F. Supp. 2d at 517–18 & n.1 (finding "no basis for making such a distinction" between improper venue and other reasons for transfer) (citing *Commonwealth Edison*, 71 F.R.D. at 394); *Team*

7

*Worldwide*, 287 F. Supp. 3d at 658–59 (rejecting both mandatory and discretionary transfer).

Venue has been established already in this Court. Whereas EPA moved to transfer challenges to its 2017 delay of the 2015 Rule's deadlines to the Fifth Circuit, *Clean Water Action v. Pruitt*, No. 17-1216 (D.C. Cir. Nov. 13, 2017), ECF No. 1704178, EPA did not seek to transfer these consolidated petitions and did not join UWAG's motion, UWAG Mot. at 1. Indeed, EPA notified the Joint Panel on Multidistrict Litigation that two petitions challenging the 2020 Rule had been filed, and, after the lottery and consolidation in this Court, EPA filed the administrative record here. ECF Nos. 9, 35-3.

Accordingly, UWAG "enters the litigation subject to the venue which already exists." *Commonwealth Edison*, 71 F.R.D. at 394. Having voluntarily joined this Fourth Circuit litigation, UWAG cannot uproot and relocate it.

## II.    The 2020 Rule Is a Different Order from the 2015 Rule.

The 2020 Rule and 2015 Rule are different rules issued half a decade apart. The 2020 Rule relies on a different record and establishes different standards from the 2015 Rule. Congress applied the 28 U.S.C. § 2112 process only to challenges to the "same" order. That process has already occurred for the challenges to the 2020 Rule consolidated here. UWAG's attempt to yoke the 2020 Rule to the 2015 Rule defies the plain language of the statute.

8

Moreover, declaring the 2020 Rule the "same order" as the 2015 Rule would contravene Congress's scheme for review of agency orders generally and Clean Water Act regulations specifically. Congress contemplated that EPA would regularly update ELGs, but unlike its approach to other statutes like the Clean Air Act, "Congress did not intend to designate any particular court of appeals as an expert forum" for Clean Water Act rulemaking challenges. *NRDC v. EPA*, 673 F.2d 392, 396–97 (D.C. Cir. 1980). Nor does the multi-circuit lottery provision of 28 U.S.C. § 2112 create specialized tribunals to hear certain types of rules. Yet UWAG's misreading of "same order" would repeatedly direct review of power plant ELG rules to one court.

> A. *The 2020 Rule is a different proceeding with a different record.*

The 2015 Rule was not incomplete, interim, or interlocutory; it was the culmination of a rulemaking process. *See generally* 16 Wright & Miller § 3944 (discussing examples of "same orders"). The 2020 Rule is a new final agency action that superseded the 2015 Rule in a separate rulemaking proceeding with a separate record. The Joint Panel on Multidistrict Litigation's 2015 Consolidation Order, which only covered petitions challenging "a notice dated November 3, 2015"—the final 2015 Rule—does not govern here. Consolidation Order, *Sw. Elec. Power Co. v. EPA*, No. 15-60821 (5th Cir. Dec. 8, 2015), ECF No. 2.

9

When petitions for review of the "same order" are filed, the rule ensures they are consolidated and transferred "to the court in which *the record* is so filed." 28 U.S.C. § 2112(a)(5) (emphasis added). For the 2020 Rule, "the record" is the one filed in this Court on December 18, not the different 2015 Rule record.

The index to the 2020 Rule's administrative record makes clear that the two proceedings are distinct. ECF No. 35-3. The record documents are categorized as "pre-2019 proposal," "Proposal," and "Final," with reference to the 2020 Rule, not the 2015 Rule. The record includes a few documents from the 2015 Rule record, but does not copy or incorporate the 2015 Rule record filed in the Fifth Circuit.[1] Rather, it is a separate record for a separate rulemaking process.

Declaring the 2020 Rule, with its different administrative record, the "same order" as the 2015 Rule would turn Section 2112 on its head. Section 2112 prevents the filing of the same record for review in different courts. *See ACLU v. FCC*, 486 F.2d 411, 414 (D.C. Cir. 1973). But granting transfer here would instead direct the filing of two different records for review in the same court. Such a result would ignore judicial economy, fairness, and the text of Section 2112.

In light of this separate rulemaking history and separate administrative record, EPA's use of the same docket number is an empty bureaucratic gesture.

---

[1] Although Petitioners reserve the right to ensure the 2020 Rule record is complete, EPA's designation of this record as the basis for its 2020 Rule is, for purposes of venue, dispositive.

10

*See, e.g.*, *CropLife Am. v. EPA*, 329 F.3d 876, 883 (D.C. Cir. 2003) ("the agency's characterization of its own action is not controlling if . . . the record indicates otherwise."); *Chamber of Commerce of the U.S. v. Occupational Safety & Health Admin.*, 636 F.2d 464, 468 (D.C. Cir. 1980) ("[B]ureaucratic boilerplate often obscures the true purpose. The administrative agency's own label is indicative but not dispositive[.]"). A rule with a distinct procedural history and substance is necessarily a different "order" than the rule it supplants.

This situation is fundamentally different from the 2017 Delay Rule, which simply extended compliance deadlines for the 2015 Rule. In the 2017 Rule, EPA considered nothing about the substance of the 2015 Rule and finalized its proposal to delay deadlines barely two months after the comment period closed. Proposed Delay Rule, 82 Fed. Reg. 26,017 (June 6, 2017) (30-day comment period); 2017 Delay Rule, 82 Fed. Reg. 43,494 (Sept. 18, 2017). Unlike the distinct record filed for the 2020 Rule, the "record" to the 2017 Delay Rule incorporated the entirety of the 2015 Rule record and merely added the much smaller set of documents from the deadline amendment. *Compare Clean Water Action*, Certified Index to Administrative Record, No. 17-1216 (D.C. Cir. Nov. 22, 2017), ECF No. 175797, *with* Administrative Record Index, *Sw. Elec. Power Co.*, No. 15-60821 (5th Cir. Jan. 16, 2018), ECF No. 00514309584. The D.C. Circuit's order transferring the

11

2017 Delay Rule's deadline extensions has no bearing on the status of the new 2020 Rule.

The rare exceptions cited by UWAG where courts have treated separately-issued orders as the "same order," and other authority it points to, have no bearing here:

- *BASF Wyandotte Corp. v. Costle* considered a final rule that replaced an interim final rule EPA issued to satisfy a court order while it finished the final rulemaking. 582 F.2d 108, 109–110 (1st Cir. 1978). That final rule was the culmination of a process that included the interim rule. But here, the 2015 Rule was a final and effective rule in its own right, and the 2020 Rule a new and separate proceeding with its own record.

- The controlling opinion in *Va. Elec. & Power Co. v. EPA* ("VEPCO") does not address Section 2112 at all. 655 F.2d 534, 535–37 (4th Cir. 1981). The concurring opinion cited by UWAG is an extended discourse on possible changes to Section 2112 that considers "virtually identical" versions of the same rule—NPDES regulations issued first on their own, and then as a package of consolidated regulations for permitting programs, and the different parts of those consolidated regulations. *Id.* at 535; *see id.* at 537–40 (Phillips, J., concurring). Such repackaging of the

12

same requirements is distinct from here, where the 2020 Rule is a different rulemaking that replaces the relevant aspects of the prior rule.

- The orders addressed in *ACLU* were part of a "single on-going proceeding" and the "staggered implementation of a single, multi-faceted agency undertaking." 486 F.2d at 413, 414. By contrast, EPA completed its proceeding with the 2015 Rule, that rule took effect, and then years later, under a new administration, EPA initiated the new and different rulemaking process challenged here.

- *Bell Atl. Tel. Cos. v. FCC* considered two orders released on the same day that "govern[ed] aspects of a single agency undertaking." Nos. 96-1333, 96-1337, 1996 WL 734326, at *1 (D.C. Cir. Nov. 25, 1996). The 2015 and 2020 Rules were issued five years apart on different records and were not phases or different segments of a larger rulemaking plan.

- The Cooling Water Intake Structure rule that this Court transferred to the Second Circuit was not a new rulemaking voluntarily undertaken to replace the older rule, as the 2020 Rule is. Instead, the cooling water intake rule responded to a remand from the Second Circuit and thus was part of the same proceeding—unlike the 2020 Rule. Mot. to Transfer, *Cooling Water Intake Structure Coal. v. EPA*, No. 14-1931 (4th Cir. Nov. 3, 2014), ECF No. 55-1.

13

- *GTE S., Inc. v. Morrison* was not a petition for review of an agency order but an appeal from a district court decision to which no federal agency was a party. 199 F.3d 733, 737 (4th Cir. 1999). The Court did not consider the meaning or application of "same order" under Section 2112.

The 2015 Rule and the 2020 Rule resulted from two entirely separate proceedings separated by a change in administrations. They cannot "fairly be called a single 'total proceeding.'" *Pub. Serv. Comm'n v. Fed. Power Comm'n*, 472 F.2d 1270, 1272 n.4 (D.C. Cir. 1972).

### B. The 2020 Rule established new and different standards.

Although the separate record and proceeding discussed above make clear that the two rules are different orders, the 2020 Rule also differs in substance. The 2020 Rule developed and established pollution limits different from those in the 2015 Rule, and the 2020 Rule's limits are based on different control technology than what EPA relied on to develop the 2015 Rule. 85 Fed. Reg. at 64,651. Further, EPA created a new regulatory framework that establishes new carveouts to shield many plants from the generally applicable limits—exemptions *not* contained in the 2015 Rule. *See id.* at 64,652. Recognizing these differences does not require detailed or technical knowledge of either rule; EPA stated the changes plainly. These new limits are now the limits power plants must meet. The relevant portions of the 2015 Rule no longer apply.

14

A rule that establishes new and different standards and a new and different framework for applying them to pollution sources, all of which replace the prior standards, cannot be the "same order" as the earlier rule. This Court has denied transfer when, as here, "the questions presented and the administrative actions challenged are obviously distinct." *North Carolina v. EPA*, 881 F.2d 1250, 1256 (4th Cir. 1989) (Phillips, J.) (single-judge order) (mandamus petition charging delay of agency proceedings and petition challenging decisions within those proceedings not "same order"). Similarly, the Eighth Circuit has declined to consider a subsequent agency order the "same" when the order raised separate issues and regulated additional products. *Midwest Video Corp. v. United States*, 362 F.2d 259, 260–61 (8th Cir. 1966) ("[T]his court's jurisdiction to review the first order does not carry with it jurisdiction to review the second order.").

UWAG cannot base transfer on its argument that the 2020 Rule revises the 2015 Rule. As this Court has observed, "[c]ourts have strictly construed the scope of § 2112(a) and held that the first filing rule does not apply where competing petitions for review challenge closely related but nevertheless distinct agency orders." *North Carolina*, 881 F.2d at 1256; *accord BASF*, 582 F.2d at 111 (the same-order "test is to be applied rigidly, and its provisions to be read narrowly."). Congress specified in 28 U.S.C. § 2112 that only challenges to the "*same* order" would be transferred, not "related" or "subsequent" orders. "[T]hose are not the

15

words that Congress wrote, and this Court is not free to 'rewrite the statute' to [a party's] liking." *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 629 (2018) (quoting *Puerto Rico v. Franklin Cal. Tax-Free Trust*, 136 S. Ct. 1938, 1949 (2016)).

Nor can UWAG use the intervening 2017 Delay Rule to portray the 2020 Rule as just another step in a single unbroken rulemaking proceeding.  The opposite is true: EPA made a final decision setting pollution limits in 2015, and then, years later and following a change in administrations, made a new and different decision setting different and weaker limits under a different regulatory framework in 2020.

### C. Mandatory transfer would undermine statutory structure and purpose.

The multi-circuit review statute is not intended to consolidate review of related but distinct orders before the same Court.  It is intended to prevent forum-shopping by the respondent agency.  Previously, agencies could effectively choose the forum where they would defend agency orders by filing the record in their preferred court.  *See* S. Rep. No. 100-263, at 2 (1987), *as reprinted in* 1987 U.S.C.C.A.N. 3198, 3198–99.  Congress enacted Section 2112 to stop that practice and later amended the law to neutralize race-to-the-courthouse schemes or simultaneous filings.  *See id.*; *see also VEPCO*, 655 F.2d at 538 (Phillips, J., concurring).

16

But Section 2112 is not intended to create, and the text does not support, a specialized-review tribunal for different agency orders on a given topic issued years apart. *Pub. Serv. Comm'n*, 472 F.2d at 1272 (no "specialization of tribunals" under Section 2112). Instead, the 10-day deadline for participating in the lottery indicates that Congress understood that parties would be challenging orders issued on the same date, not separate orders spread across years. Otherwise, the lottery process would be wasted effort for all involved, and would foster the very confusion and gamesmanship Section 2112 was designed to prevent. Under UWAG's overly broad view of the statute, a prior consolidation order would lock out of their home venue petitioners challenging a later order who had no reason to challenge the original one.

UWAG's argument also clashes with the Clean Water Act. The Act was designed to propel continual progress on controlling pollution through successively more protective standards. Effluent limitations must "result in reasonable further progress toward the national goal of eliminating the discharge of all pollutants." 33 U.S.C. § 1311(b)(2)(A). To that end, Congress contemplated that EPA would regularly review and revise these standards as needed. *Id.* §§ 1314(b) (at least annually), 1317(a)(3) (every three years), (b)(2) (from time to time). Yet Congress expressly declined to place review of all ELG rules for a given industry in a single court. "[T]he CWA itself indicates that Congress did not intend to designate any

17

particular court of appeals as an expert forum." *NRDC*, 673 F.2d at 396–97. This approach is the opposite of Congress's approach to other environmental statutes. *Compare* 33 U.S.C. § 1369(b)(1) (Clean Water Act provision directing review of national rules to circuit where petitioner resides or transacts business), *with* 42 U.S.C. § 7607(b)(1) (Clean Air Act provision directing review of national rules to D.C. Circuit), *and id.* § 6976(a)(1) (same under Resource Conservation and Recovery Act). Granting transfer would undermine Congress's deliberate choice.

## III.    Discretionary Transfer Is Unwarranted.

Transferring the 2020 Rule litigation on a discretionary basis would be neither convenient nor just.

The interests of justice weigh in favor of maintaining the litigation here. The Community Groups are based in North and South Carolina. They work to protect their communities and water resources within the Fourth Circuit. They and their members are harmed by the water pollution from power plants throughout this Circuit. *See* Exhibit 1, Declarations.

As the Community Groups explained in their comments to EPA during the rulemaking process, these plants exemplify the problems with the 2020 Rule: It fails to address the threat of carcinogens from bromide pollution, like the pollution from Duke Energy's Belews Creek plant, which has persistently harmed North Carolina and Virginia communities along the Dan River. It weakens limits even

18

when Duke Energy plants in the Carolinas have better control technology not just available but actually installed. And it creates exemptions to allow plants like Winyah in South Carolina to keep polluting for many more years. *See generally* Exhibit 2, Comments of Southern Environmental Law Center *et al.* (Jan. 21, 2020) (excluding attachments), *available at* https://regulations.gov/document/EPA-HQ-OW-2009-0819-8465.

For years, the water pollution from coal-fired power plants has been an issue of great public concern in this region. Widespread public outcry was sparked by the mismanagement and lax regulation that led to the Dan River coal ash spill in 2014. The Southeast now leads the nation in coal ash cleanups, *id.* at 2, but the ongoing pollution of the region's waters by many of the same power plants—still emitting high levels of many of the same pollutants via their FGD and bottom ash waste streams—remains a major community concern. These concrete interests in the on-the-ground consequences of this litigation in the Southeast mean that the interests of justice are best served by this litigation remaining in the Fourth Circuit.

Furthermore, the interests of justice weigh against transfer because UWAG's motion impermissibly uproots this litigation. Community Groups and the *Clean Water Action* petitioners who filed in the D.C. Circuit played by the rules and have accepted the Fourth Circuit as the proper established venue. EPA has done the same, initiating the lottery and then accepting the assigned venue by filing the

administrative record in this Court.  As explained above, intervenors are prohibited from challenging venue, and this case illustrates why this rule promotes justice.  It would be fundamentally unfair for an intervenor to be allowed to move these cases to its preferred venue when the petitioners and respondent all recognize the Fourth Circuit as the appropriate venue.

By contrast, no issues of convenience or justice favor transfer to the Fifth Circuit.  The Community Groups are based in the Fourth Circuit, but this litigation includes national and regional parties, and the attorneys in this case are scattered around the country.  Contradicting UWAG's main argument for discretionary transfer, Mot. at 19–20, the administrative record for the 2020 Rule has been filed with the Fourth Circuit, and the Fifth Circuit is not familiar with this new and different record.  And the Fourth Circuit is perfectly competent to review petitioners' challenge to the 2020 Rule, including determining whether and how to apply relevant decisions of other Courts of Appeals.  Contrary to UWAG's suggestion (UWAG Mot. at 20), the Fifth Circuit is not the only circuit that can rule on the 2020 Rule simply because a prior Fifth Circuit decision concerning an earlier rule may be relevant to this challenge.

In addition, UWAG's transfer bid wrongly characterizes the separate lawsuits over the 2015 and 2017 Rules.  There has been no "same appellate tribunal" within the Fifth Circuit "maintain[ing] continuity in the total proceeding."

UWAG Mot. at 9 (quoting Order, *Clean Water Act v. Pruitt*, No. 17-1216, ECF No. 1716063 (D.C. Cir. Feb. 1, 2018)).  The challenge to the 2017 Delay Rule was transferred to the Fifth Circuit, but it was not consolidated with the challenge to the 2015 Rule.  It proceeded and was decided as a separate case before a separate panel from the one that decided environmental groups' challenges to the 2015 Rule.  *Compare Clean Water Action v. EPA*, 936 F.3d 308 (5th Cir. 2019) (Higginbotham, Jones, and Costa, JJ.), *with Sw. Elec. Power Co. v. EPA*, 920 F.3d 999 (5th Cir. 2019) (Haynes, Ho, and Duncan, JJ).

## IV.   Transfer Is Impermissible Because the Fifth Circuit Litigation Is Moot.

Beyond these reasons, this litigation must remain in the Fourth Circuit because the 2020 Rule supplanted the 2015 Rule, mooting the industry groups' Fifth Circuit challenge.  Where other appeals "have already been disposed of" in another court, transfer is not appropriate.  *Far E. Conference v. Fed. Mar. Comm'n*, 337 F.2d 146, 148 n.1 (D.C. Cir. 1964).  Here, UWAG concedes that the portions of the 2015 Rule UWAG and other industry petitioners challenged no longer affect them.  Consequently there is no live "case" in the Fifth Circuit and nothing left for that court to decide.

The replacement of a challenged agency action renders a challenge to that action moot.  *See Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (challenge to validity of an "old regulation" moot where the "regulation at issue is no longer

in force"). When the agency issues new and different regulations, "[t]he old set of rules . . . cannot be evaluated as if nothing has changed. A new system is now in place." *Nat'l Mining Ass'n v. U.S. Dep't of Interior*, 251 F.3d 1007, 1011 (D.C. Cir. 2001) (challenge to regulations rendered moot by EPA's promulgation of new rules).

Likewise, when the Forest Service replaced a challenged rule, the new rulemaking "mooted the issues in th[e] case" because the substantive "portions of the Roadless Rule that were substantively challenged by Wyoming no longer exist." *Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1210, 1212 (10th Cir. 2005).

UWAG concedes the 2020 Rule moots its Fifth Circuit claims. UWAG Mot. at 10. Its contention that transfer is nonetheless appropriate because this litigation could invalidate the 2020 Rule is simply wrong and provides no basis for this Court to cede review to the Fifth Circuit. "The prospect that litigants could be injured 'if' a court were someday to invalidate the federal regulations" that supplanted the challenged rule "is little different from the prospect that any litigant could be injured 'if' EPA (or Congress) were eventually to enact a rule it presently had under consideration." *Chamber of Commerce of the U.S. v. EPA*, 642 F.3d 192, 208 (D.C. Cir. 2011). Such a possibility cannot sustain jurisdiction.

22

## **CONCLUSION**

As an intervenor, UWAG cannot upend the established venue when the respondent has not challenged it.  UWAG's motion defies the "same order" requirement and serves neither justice nor convenience.  And UWAG's Fifth Circuit challenge is moot, leaving no live case in the Fifth Circuit for this case to join.  This litigation should remain in this Court.

*/s/ Leslie Griffith*
Leslie Griffith
Frank S. Holleman, III
Nicholas S. Torrey
Megan Kimball
Southern Environmental Law Center
601 W. Rosemary Street, Suite 220
Chapel Hill, N.C. 27516
919-967-1450
lgriffith@selcnc.org
fholleman@selcnc.org
ntorrey@selcnc.org
mkimball@selcnc.org

*Counsel for Petitioners Appalachian Voices, Good Stewards of Rockingham, Stokes County Branch of the NAACP, and Winyah Rivers Alliance*

23

**CERTIFICATE OF COMPLIANCE**

I certify that this response complies with the length limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 5,178 words, as determined by the word-count function of Microsoft Word, excluding any accompanying documents required by Fed. R. App. R. 27(a)(2)(B).

This response complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

*/s/* Leslie Griffith
Leslie Griffith

## CERTIFICATE OF SERVICE

I certify that on December 23, 2020, an electronic copy of the foregoing was filed with the Clerk of Court for the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system.

I further certify that all parties or their counsel of record are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/* Leslie Griffith
Leslie Griffith