**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

APPALACHIAN VOICES, *et al.*,

Petitioners,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, *et al.*,

Respondents.

Case No. 20-2187(L)
*consolidated with*
No. 20-2244

**PETITIONERS CLEAN WATER ACTION, ENVIRONMENTAL
INTEGRITY PROJECT, SIERRA CLUB, WATERKEEPER
ALLIANCE, INC., NATURAL RESOURCES DEFENSE COUNCIL, INC.,
CENTER FOR BIOLOGICAL DIVERSITY, PENNENVIRONMENT, INC.,
CHESAPEAKE CLIMATE ACTION NETWORK, AND PRAIRIE RIVERS
NETWORK'S RESPONSE IN OPPOSITION TO INTERVENOR UTILITY
WATER ACT GROUP'S MOTION FOR TRANSFER**

Petitioners Clean Water Action, Environmental Integrity Project, Sierra

Club, Waterkeeper Alliance, Inc., Natural Resources Defense Council, Inc., Center

for Biological Diversity, PennEnvironment, Inc., Chesapeake Climate Action

Network, and Prairie Rivers Network (collectively, "Environmental Petitioners")

respectfully oppose the motion of Intervenor Utility Water Act Group ("UWAG")

for transfer of these consolidated cases to the Fifth Circuit Court of Appeals.

The Court must reject UWAG's motion for transfer for at least three

independent reasons. First, as an intervenor, UWAG must take these cases –

1

which were consolidated in this Court by order of the Judicial Panel on Multidistrict Litigation – as it finds them.  Having voluntarily chosen to enter this proceeding, UWAG may not seek to commandeer it to its preferred venue.

Second, because the 2020 rule issued by the U.S. Environmental Protection Agency ("EPA") that petitioners challenge in these cases is distinct from the 2015 rule that UWAG challenged in the Fifth Circuit, transfer is not appropriate under 28 U.S.C. § 2112(a)(5).  The two rules involved separate notice-and-comment rulemaking processes and reached different outcomes based on distinct administrative records.  These two distinct EPA actions are not the "same order" as this Court construed that term in *State of North Carolina Environmental Policy Institute, et al. v. EPA*, 881 F.2d 1250, 1256 (4th Cir. 1989).

Finally, as described in detail below, UWAG's claims challenging EPA's 2015 rule in the Fifth Circuit have now been fully resolved by EPA's issuance of the 2020 rule and other recent developments.  Because there is no longer an active case or controversy in that proceeding, transfer of these cases is inappropriate for that reason as well.

## BACKGROUND

### I.    Water Pollution From Power Plants

Steam electric power plants are by far the largest industrial source of toxic water pollution in the United States.  EPA, Environmental Assessment for the

Effluent Limitations Guidelines and Standards for the Steam Electric Power

Generating Point Source Category ("EA"), Index.1788, at 3-15, Table 3-3 (Sept.

2015).[1]  This source category generates more toxic wastewater than the next two-

largest polluting industries combined.  *Id.*  Every year, power plants dump into

rivers, lakes, and streams billions of gallons of wastewater containing a slew of

toxic pollutants such as arsenic, mercury, and lead.  Effluent Limitations

Guidelines and Standards for the Steam Electric Power Generating Point Source

Category, Final Rule, 80 Fed. Reg. 67,838, 67,838-40 (Nov. 3, 2015).  The

pollutants in the wastewater cause serious health problems, ranging from reduced

IQ to cancer.  *Id.* at 67,838.  Power plant water pollution, particularly selenium, is

also toxic to fish and other aquatic life.  EA, Index.1788, at 3-4 to 3-5.

## II.    2015 ELG Rule

In 2015, EPA promulgated long-overdue revisions to the Effluent

Limitations Guidelines and Standards for the Steam Electric Power Generating

Point Source Category ("ELG Rule" or "ELGs").  The 2015 ELG Rule was the

first update to the ELGs for water pollution from power plants since 1982, and the

first time EPA had ever established ELGs for toxic pollutants in that wastewater

---

[1] EPA filed a certified index of its administrative record with this Court on December 18, 2020.  ECF Doc. 35-1.  Environmental Petitioners cite to documents in the administrative record by the row in which the document appears in EPA's index, followed by a pincite.  For example, "EA, Index.1788, at 3-4" refers to page 3-4 of the Environmental Assessment, which is listed in row 1788 of the index.

based on the stringent Best Available Technology Economically Achievable ("BAT") standard.  80 Fed. Reg. at 67,840.

EPA promulgates ELGs for polluting industries pursuant to the federal Clean Water Act, which sets a national goal of eliminating pollution discharged into our nation's waterways.  33 U.S.C. § 1251(a)(1).  To achieve that goal, EPA must establish increasingly stringent, technology-based limits, which are designed to spur industry to adopt new technologies for reducing, and ultimately eliminating, water pollution.  *Id.* § 1311.

The 2015 ELG Rule was in many respects a significant step forward in protecting people and the environment from power plants' toxic water pollution as required by the Clean Water Act.  Among other things, the ELG Rule established new, more protective limitations and standards for two power plant wastestreams, *i.e.*, bottom ash transport water and Flue Gas Desulfurization ("FGD") wastewater, which are the two largest sources of discharges of toxic pollutants to U.S. waters by power plants.  The rule required elimination of bottom ash transport water discharges, based on the availability of technologies that could recycle that wastewater or eliminate the need for it to be used, *see* 80 Fed. Reg. at 67,841, 67,849, 67,852-53, and set limits on discharges of mercury, arsenic, selenium, and other pollutants in FGD wastewater, based on the levels that biological and chemical wastewater treatment had achieved at existing plants, *see id.* at 67,841,

4

67,849-52.  The 2015 ELG Rule also established BAT limits for wastewater from coal gasification power plants.  *See id.* at 67,841, 67,849, 67,853-54.  EPA estimated in 2015 that, if fully implemented, the ELG Rule would reduce toxic and conventional water pollution from steam electric power plants by over 1.4 billion pounds per year.  *Id.* at 67,841.

### III.    Fifth Circuit Litigation Over The 2015 ELG Rule

After the ELG Rule was finalized in November 2015, seven petitions for review filed in several different Courts of Appeals and were consolidated in the Fifth Circuit, pursuant to an order of the Judicial Panel on Multidistrict Litigation.  *See* Consolidation Order, *In re: EPA, Effluent Limitation Guidelines*, MCP No. 136, ECF Doc. 3 (J.P.M.L. Dec. 8, 2015).  Petitioners in that proceeding included several of Environmental Petitioners as well as UWAG and several other industry groups.

The Fifth Circuit petitioners filed opening briefs in December 2016. Environmental petitioners (including several of Environmental Petitioners in this case) challenged EPA's failure to set new, more stringent effluent limitations on two power plant wastestreams, legacy wastewater and leachate.  Envtl. Pet. Opening Br., Case No. 15-60821, ECF Doc. 00513785014 (5th Cir. Dec. 5, 2016).

Two trade associations representing municipal drinking water utilities, the American Water Works Association and the National Association of Clean Water

5

Agencies, challenged EPA's failure to set limits on bromides in power plant discharges, because of the burdens and costs that such pollution imposes on municipal drinking water utilities that rely on source waters that are downstream from power plants.  Am. Water Works Ass'n Opening Br., Case No. 15-60821, ECF Doc. 00513784433 (5th Cir. Dec. 5, 2016).

In its opening brief, UWAG raised five claims challenging the 2015 ELG Rule.  UWAG Opening Br., Case No. 15-60821, ECF Doc. 00513783903 (5th Cir. Dec. 5, 2016).  UWAG claimed that EPA violated the Administrative Procedure Act ("APA") by withholding essential data, methodologies, and analyses related to the cost or performance of wastewater treatment technologies for FGD wastewater and bottom ash transport water from the public record as confidential business information.  Id. at 24-43.  Relatedly, UWAG asserted that EPA violated the APA by relying on confidential business information materials not in the public record when responding to public comments regarding the impact of facility age on its selection of BAT, the effectiveness of biological treatment at removing pollutants from FGD wastewater, and the costs of BAT.  Id. at 43-51.  UWAG also asserted that it was arbitrary and capricious for EPA to set limits for discharges of selenium and nitrates in FGD wastewater based on use of biological treatment and apply those limits to all coal plants, including plants burning subbituminous coal or lignite, without collecting wastewater data or performing analyses necessary to

6

determine whether those specific types of plants can achieve such limits. *Id.* at 51-67. Additionally, UWAG claimed EPA violated the APA by failing to provide the public any opportunity to comment on EPA's analyses of the Clean Power Plan, a 2015 rule that established greenhouse gas emission guidelines for power plants, which was proposed after the close of the ELG rule comment period and which EPA relied on in the final ELG Rule. *Id.* at 67-72. Finally, UWAG asserted that it was arbitrary and capricious for EPA to set BAT limits for gasification wastewater that would apply to Duke Energy's Edwardsport facility without any data regarding Crystallizer Effluent at integrated gasification combined-cycle facilities. *Id.* at 72-77.

On April 24, 2017, the Fifth Circuit granted EPA's motion to stay proceedings over the 2015 ELG Rule while EPA considered petitions for reconsideration of the ELG Rule submitted by UWAG and the United States Small Business Administration. Order, Case No. 15-60821, ECF Doc. 00513964356 (5th Cir. Apr. 24, 2017).

On August 22, 2017, the Fifth Circuit granted EPA's motion to sever and hold in abeyance UWAG's and other industry petitioners' challenges to the 2015 ELG Rule pending EPA's reconsideration of certain portions of the rule that they challenged. Order, *Sw. Elec. Power Co. v. EPA*, No. 15-60821, ECF Doc. 00514126308 (5th Cir. Aug. 22, 2017). While UWAG's and the other industry

7

petitioners' claims were severed and stayed, briefing was completed on environmental petitioners' claims and the Fifth Circuit held oral argument on those claims.

On April 12, 2019, the Court ruled in favor of environmental petitioners' challenges to the legacy wastewater and leachate provisions of the 2015 ELG Rule and vacated those provisions. *Sw. Elec. Power Co. v. United States Envtl. Prot. Agency*, 920 F.3d 999 (5th Cir. 2019).

**IV.   Reconsideration Rule and Its Impact on UWAG's Claims**

On October 13, 2020, EPA finalized the Steam Electric Reconsideration Rule, 85 Fed. Reg. 64,650 (Oct. 13, 2020) [hereinafter "Reconsideration Rule"], in part to respond to UWAG's 2017 petition for reconsideration. The Reconsideration Rule significantly revises the BAT limits for FGD wastewater and bottom ash transport water and resolves all of the claims asserted in UWAG's 2015 petition for review. The Reconsideration Rule was finalized after the Agency conducted a new notice-and-comment rulemaking proceeding, in which UWAG (along with many others) submitted comments on the proposed rule, 84 Fed. Reg. 64,620 (Nov. 22, 2019). *See* Comment submitted by Elizabeth E. Aldridge, Hunton Andrews Kurth LLP on behalf of UWAG, Index.2753 (Jan. 21, 2020) [hereinafter "UWAG 2020 Comments"].

In its comments on the proposed Reconsideration Rule, UWAG did not raise any of the procedural or substantive claims relating to the Reconsideration Rule that it had raised in the ELG rulemaking proceeding that concluded in 2015. *See id.* UWAG is no longer asserting that it lacks—or that EPA has improperly withheld—information regarding the Agency's supporting basis for the BAT limits applicable to FGD wastewater or bottom ash transport water. *See id.*

UWAG also did not raise any issues relating to the availability of biological treatment for FGD wastewater for plants burning different types of coal. *See id.* Moreover, EPA determined, as the Agency did in the 2015 ELG rulemaking,[2] that biological treatment technology for FGD wastewater is available to the entire industry regardless of plant configuration or operation conditions, including factors such as coal types and coal sources. *See* Supplemental Statistical Support Document: Effluent Limitations for Final Steam Electric Power Generating Effluent Limitations Guidelines and Standards, Index.1631, at 18 (Aug. 2020);

---

[2] *See* Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category: EPA's Response to Public Comments Part 5 of 10, Docket No. EPA-HQ-OW-2009-0819-6469 at 5-388 to -91, 5-450 to -51 (Sept. 2015) (attached as Ex. A); Technical Development Document for the Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category, Docket No. EPA-HQ-OW-2009-0819-6432, at 13-40 (Sept. 2015) (attached as Ex. B). EPA did not include these supporting documents for the 2015 ELG Rule in the administrative record index that it filed in this Court, which only underscores that the 2020 Reconsideration Rule is a new and separate rulemaking.

Response to Public Comments for Revisions to the Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category, Index.2993, at 2-80 (Aug. 2020) [hereinafter "2020 RTC"].

UWAG's other claims in the Fifth Circuit proceeding have similarly now been resolved. Since the Clean Power Plan was repealed in June 2019,[3] EPA did not include an analysis of the Clean Power Plan's impacts on the Reconsideration Rule as the Agency did for the ELG Rule. Moreover, UWAG's claim challenging the BAT limits for gasification wastewater was resolved once Duke Energy, which owned the only gasification facility as to which UWAG challenged those standards,[4] was granted a variance from the effluent limitations for mercury and total dissolved solids for gasification wastewater at its Edwardsport facility and Duke Energy's separate petition for review was voluntarily dismissed. *See* Order, *Sw. Elec. Power Co. v. EPA*, No. 15-60821, ECF Doc. 00514658068 (5th Cir. Sept. 26, 2018); Status Report Update, *Sw. Elec. Power Co. v. EPA*, No. 15-60821, ECF Doc. 00514666048 (5th Cir. Oct. 2, 2018).

_____

[3] Repeal of the Clean Power Plan; Emission Guidelines for Greenhouse Gas Emissions From Existing Electric Utility Generating Units; Revisions to Emission Guidelines Implementing Regulations, 84 Fed. Reg. 32,520 (July 8, 2019).

[4] *See* UWAG Opening Br. at 73 ("Given that . . . there is insufficient data in the record regarding the performance of Edwardsport's [gasification wastewater] treatment system to know whether the Edwardsport facility can comply with the [gasification wastewater] limits, EPA's assumption that there would be no capital costs of compliance due to the [gasification wastewater] limits is arbitrary and capricious.").

### V.    Legal Challenges to Reconsideration Rule and Consolidation in this Court

After EPA promulgated the Reconsideration Rule, several parties filed a petition for review in this Court. Petition for Review, ECF Doc. 3-1 (Nov. 2, 2020). Environmental Petitioners filed a petition for review in the D.C. Circuit Court of Appeals. Petition for Review, *Clean Water Action v. Wheeler*, Case No. 20-1436, ECF Doc. 1869517 (D.C. Cir. Nov. 2, 2020). UWAG has not filed a petition for review of the Reconsideration Rule in this Court or any other court.

On November 19, 2020, after EPA requested that the Judicial Panel on Multidistrict Litigation determine the appropriate venue for petitions for review challenging the Reconsideration Rule, the Panel issued an order consolidating the two petitions for review that had already been filed, any other petitions for review that might be timely filed, in this Court. Consolidation Order, *In Re: Environmental Protection Agency*, *Final Rule: Steam Electric Reconsideration Rule*, MCP No. 161, ECF Doc. 5 (J.P.M.L. Nov. 19, 2020).

UWAG moved to intervene in this proceeding and for transfer of these consolidated cases to the Fifth Circuit. UWAG Motion for Leave to Intervene, ECF Doc. 16 (Dec. 2, 2020); UWAG Motion for Transfer, ECF Doc. 17 (Dec. 2, 2020) [hereinafter "UWAG Mot. for Transfer"].

## ARGUMENT

### I.    UWAG's Motion for Transfer Must Be Denied Because, as an

11

**Intervenor in this Proceeding, UWAG May Not Question Venue.**

As a threshold matter, UWAG's motion for transfer must fail because, as an intervenor in these consolidated cases, UWAG is barred from seeking transfer to a different venue.  "Generally speaking, an intervenor is held to take the case as he finds it."  *Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 122 (4th Cir. 1981).  The Judicial Panel on Multidistrict Litigation, in response to a filing made by EPA seeking a determination of the appropriate venue for petitions for review challenging the Reconsideration Rule, has ordered that any such petitions be consolidated in this Court.  Consolidation Order, *In Re: Environmental Protection Agency*, *Final Rule: Steam Electric Reconsideration Rule*, MCP No. 161, ECF Doc. 5 (J.P.M.L. Nov. 19, 2020).  EPA has not objected to venue in this Court, does not join UWAG's motion for transfer, and has filed the Reconsideration Rule's administrative record index in this case.  *See* ECF Doc. 35-1.  As an intervenor that has voluntarily chosen to appear in this Court, UWAG may not question whether this Court is an appropriate venue when EPA has not chosen to do so.  *See Cent. Tr. Co. v. McGeorge*, 151 U.S. 129 (1894); *see also Trans World Airlines, Inc. v. Civil Aeronautics Bd.*, 339 F.2d 56, 63-64 (2d Cir. 1964), *cert. denied*, 382 U.S. 842 (1965) ("Venue is a privilege personal to a defendant in a civil suit and a person intervening on either side of the controversy may not object to improper venue."); *Beam Laser Sys., Inc. v. Cox*

12

*Commc'ns., Inc.*, 117 F. Supp. 2d 515, 517 (E.D. Va. 2000) (determining that "as an intervenor, SeaChange may not question venue"); *Commonwealth Edison Co. v. Train*, 71 F.R.D. 391, 394 (N.D. Ill. 1976) ("When a party seeks to enter pending litigation as an intervenor, he enters the litigation subject to the venue which already exists."); Charles A. Wright & Arthur R. Miller, 7C Federal Practice and Procedure § 1918 (3d ed. 2002) ("By voluntarily entering the action the intervenor has waived the privilege not to be required to engage in litigation in that forum."). Because UWAG's intervenor status precludes it from seeking to commandeer these consolidated cases and transfer them to a different venue, the Court should deny UWAG's motion on this basis alone.

## II.     The Reconsideration Rule Is Not the "Same Order" as the 2015 ELG Rule.

This Court must also reject UWAG's motion because transfer is only appropriate under 28 U.S.C. § 2112(a)(5) for "proceedings [that] are instituted with respect to the same order."  This Court has found that this "same order" requirement in Section 2112(a)(5) does not apply to "closely related but nevertheless distinct agency orders."  *State of N.C. Envtl. Policy Inst. v. EPA*, 881 F.2d 1250, 1256 (4th Cir. 1989) (Phillips, J.) (single-judge order) (citing *Midwest Video Corp. v. United States*, 362 F.2d 259, 260 (8th Cir. 1966)).  Here, the 2020 Reconsideration Rule is distinct from the 2015 ELG Rule and, therefore, not the "same order" as that prior rulemaking.

13

The Reconsideration Rule was a new and separate notice-and-comment rulemaking process from EPA's 2015 rulemaking. The two final rules are separated by approximately five years, and while they involve overlapping subject matter, they reached different substantive outcomes based on distinct administrative records. EPA has filed an administrative record index for the Reconsideration Rule with this Court, *see* Notice of Filing Certified Index to the Administrative Record, ECF Doc. 35-1 (Dec. 18, 2020), that is different than the administrative record index EPA filed with the Fifth Circuit for the ELG rule in 2016, *see* Certified Index to the Administrative Record, Case No. 15-60821, ECF Doc. 00513538746 (5th Cir. June 8, 2016). While the 2020 administrative record index does reflect some historical documents that are also in the record of the 2015 rule, the vast majority of the 3784 documents in EPA's index were collected and/or developed in the five years since the 2015 ELG Rule was issued. *See* ECF Doc. 35-1. Notably, the 2020 administrative record index that EPA filed with this Court does not include any of the final decision documents for the 2015 ELG Rule. *See* ECF Doc. 35-1 (decision documents such as EPA's 2015 technical development document and responses to public comments not included). These significant

differences between the records of the two rules only underscore that they were the product of separate and distinct rulemakings.[5]

The two cases cited by UWAG involving "sequential or closely related orders" that were treated as "the same order" under 28 U.S.C. § 2112(a)(5), *see* UWAG Mot. for Transfer at 13 (internal citations and quotation marks omitted), are distinguishable from this case in two critical respects. First, in each of those cases, the agency issuing the order had taken the position that, challenges to the different orders must be heard in the same venue. *See BASF Wyandotte Corp. v. Costle*, 582 F.2d 108, 112 (1st Cir. 1978) (EPA and two petitioners supported venue over two related EPA orders in the First Circuit; only a third petitioner sought to challenge a second agency order in a different court); *Am. Civil Liberties Union v. F.C.C.*, 486 F.2d 411, 413-15 (D.C. Cir. 1973) (granting agency motion for transfer under 28 U.S.C. § 2112(a) to consolidate challenges to two orders from the same rulemaking proceeding). That is not the case here. EPA has not taken the position that the Reconsideration Rule is the "same order" as the 2015 ELG Rule nor joined UWAG's motion for transfer. Rather, after petitions for review of

---

[5] Environmental Petitioners reserve the right to move to complete the administrative record in this case, if upon further review it appears that EPA omitted documents or information from the record that is materially significant to Environmental Petitioners' claims challenging the Reconsideration Rule. *See* 5 U.S.C. § 706 (providing that "the court shall review the whole record" that was before the agency at the time it made its decision).

the Reconsideration Rule were filed, EPA filed the petitions with the Judicial Panel on Multidistrict Litigation, resulting in the Panel's ordering consolidation in this Court.  Consolidation Order, *In Re: Environmental Protection Agency*, *Final Rule: Steam Electric Reconsideration Rule*, MCP No. 161, ECF Doc. 5 (J.P.M.L. Nov. 19, 2020).

Second, both *BASF Wyandotte Corporation* and *American Civil Liberties Union* involved two agency orders issued in a single proceeding involving a shared, cumulative record.  *See BASF Wyandotte Corp.*, 582 F.2d at 110-12 (two agency actions at issue were interim and final regulations developed based on the same cumulative record); *Am. Civil Liberties Union*, 486 F.2d at 413-15 (two agency orders at issue were part of a single, formal agency adjudication).  Here, by contrast, EPA has filed a different and separate administrative record index for the Reconsideration Rule with this Court than it had previously filed with the Fifth Circuit for the 2015 ELG Rule, as noted above.

UWAG also cited two prior decisions from this Court, *see* UWAG Mot. for Transfer at 13, but both decisions involved different venue issues and are clearly distinguishable.  In *Virginia Electric and Power Company v. EPA*, 655 F.2d 534, 539 (4th Cir. 1981) (Phillips, J., concurring), one judge of this Court discussed the First Circuit's holding in *BASF Wyandotte Corporation* with approval in a concurring opinion, but the case itself involved whether challenges to EPA

16

procedural regulations involving multiple environmental statutes should all be heard in the D.C. Circuit, since some of the implicated statutes (although not the Clean Water Act) required venue in the D.C. Circuit.  In *GTE South, Inc. v. Morrison*, 199 F.3d 733, 743 (4th Cir. 1999), the Court held that, where challenges to an agency rule had been consolidated in a different Court of Appeals under 28 U.S.C. § 2112(a), this Court lacked jurisdiction to consider the lawfulness of that rule in a different case.  The question at issue in this case—whether two separate agency rules should be treated as the "same order" —was not at issue in either *Virginia Electric and Power Company* or *GTE South*.

Finally, the D.C. Circuit's transfer to the Fifth Circuit of legal challenges to the 2017 ELG Postponement Rule, *see* UWAG Mot. for Transfer at 12, does not require a similar transfer of venue in this case.  Although the D.C. Circuit found that the 2017 ELG Postponement Rule was part of an agency proceeding that was inter-related with the 2015 ELG rulemaking,[6] it made this finding based on EPA's motion, which took the position that the two rules were part of the same agency proceeding,[7] a position that EPA has not taken here.  Further, unlike the 2020 Reconsideration Rule, the 2017 rule was based on a rulemaking record that was

---

[6] *See* Order, *Clean Water Action v. Pruitt*, Case No. 17-1216, ECF Doc. 1716063 (D.C. Cir. Feb. 1, 2018).
[7] *See* EPA Mot. to Transfer, *Clean Water Action v. Pruitt*, Case No. 17-1216, ECF Doc. 1704178 (D.C. Cir. Nov. 13, 2017).

nearly identical to the 2015 rule. *See* Administrative Record Index, *Clean Water Action v. Pruitt*, Case No. 18-60079, ECF Doc. 00514391502 (5th Cir. Mar. 19, 2018) (describing an administrative record with 12,843 documents from the 2015 rulemaking and only 1162 documents post-dating the 2015 rule). The relationship between the 2015 and 2017 rules was thus materially different than the relationship between the 2015 rule and the 2020 Reconsideration Rule. Accordingly, this Court need not find the D.C. Circuit's transfer order on the 2017 ELG Postponement Rule persuasive. Instead, the Court should follow its own prior precedent in *State of North Carolina Environmental Policy Institute, et al. v. EPA*, 881 F.2d 1250, 1256 (4th Cir. 1989), hold that the 2020 Reconsideration Rule is a distinct agency order from the 2015 ELG Rule, and deny UWAG's motion for transfer on this basis as well.

### III.    UWAG's Motion for Transfer Must Be Denied Because UWAG's Fifth Circuit Claims Are Moot.

UWAG's motion for transfer must also be denied because its claims in the Fifth Circuit are now moot in light of the Reconsideration Rule and other recent developments.[8] Accordingly, there is no longer an active case or controversy in the Fifth Circuit, and thus no active proceeding there with which these cases could

---

[8] Several of Environmental Petitioners who are also respondent-intervenors in the Fifth Circuit proceeding – Sierra Club, Environmental Integrity Project, Waterkeeper Alliance, Inc., and Clean Water Action – are filing today a motion to dismiss UWAG's claims there as moot.

be consolidated under 28 U.S.C. § 2112(a)(5). *See Far E. Conference v. Fed. Mar. Comm'n*, 337 F.2d 146, 148 n.1 (D.C. Cir. 1964) (finding that transfer was not appropriate where purportedly similar cases were no longer active); *cf. Am. Civil Liberties Union*, 486 F.2d at 414 ("It is not possible to consolidate a pending petition with one involved in litigation which has ended.").

As described above, each of UWAG's claims has been fully resolved by either the Reconsideration Rule or other recent developments. *See supra* at 8-10. Thus, UWAG's claims challenging the 2015 ELG Rule are now moot, because the Fifth Circuit is no longer able to grant effectual relief on UWAG's claims. *See Church of Scientology v. United States*, 506 U.S. 9, 12 (1992); *see also Chamber of Commerce of U.S. v. EPA*, 642 F.3d 192, 210 (D.C. Cir. 2011) ("Even where litigation poses a live controversy when filed," a federal court must dismiss a case as moot "if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.").

In response to UWAG's petition for reconsideration, EPA expressly reconsidered and revised each of the provisions of 2015 ELG Rule that UWAG had challenged in its petition for reconsideration. *See* 85 Fed. Reg. at 64,654. Specifically, in response to UWAG's arguments that the Agency failed to respond to industry concerns regarding the cost or technical feasibility of EPA's 2015 FGD

wastewater or bottom ash transport water requirements, EPA "met with UWAG to discuss approaches for managing" those discharges and invited additional comment from vendors and sources regarding the cost and availability of wastewater treatment technologies.[9]  In response to those comments, EPA revised the numeric standards for both FGD and bottom ash discharges.  UWAG now "supports EPA's choice of model technology" and has not asserted any claim challenging the sufficiency of EPA's record or the substance of EPA's reconsidered requirements.  *See* UWAG 2020 Comments at 59; *see also* 2020 RTC at 1-1141.  As noted above, with respect to UWAG's challenge to EPA's analysis of biological treatment for FGD wastewater, EPA invited additional comment, reevaluated the issue, and concluded that biological treatment is available to the entire power industry, resolving UWAG's claim that EPA had not analyzed the issue.  *See supra* at 9-10.  UWAG has not raised any challenges to the analysis of biological treatment for FGD wastewater in the Reconsideration Rule.  *See* UWAG 2020 Comments.

UWAG's other two claims in this case are similarly moot.  First, UWAG's challenge to gasification wastewater requirements is moot because that challenge applied to only one power plant—Duke Energy's Edwardsport plant—which

---

[9] Supplemental Technical Development Document for Revisions to the Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category, Index.2364 at 2-4, 2-5 (Aug. 2020).

subsequently dismissed its own challenge to the 2015 Rule when EPA granted it a variance from those standards. *See supra* at 10. Second, UWAG's claim concerning EPA's analysis of the Clean Power Plan is moot because EPA withdrew that rule in July 2019 and it is no longer in effect. Repeal of the Clean Power Plan; Emission Guidelines for Greenhouse Gas Emissions From Existing Electric Utility Generating Units; Revisions to Emission Guidelines Implementing Regulations, 84 Fed. Reg. 32,520 (July 8, 2019).

UWAG itself effectively concedes in its motion for transfer to this Court that its claims in the Fifth Circuit are moot. *See* UWAG Mot. for Transfer at 10. UWAG's argument, however, is that its claims may not be moot in the future, because of the possibility that this litigation could result in a court vacating some or all of the Reconsideration Rule. *See id.*

UWAG's argument is without merit. The speculative prospect that a court *might* someday invalidate the Reconsideration Rule or reinstate aspects of the 2015 ELG Rule does not provide a basis for any court to retain jurisdiction over claims challenging the rule. Indeed, the "prospect that litigants could be injured 'if' a court were someday to invalidate the [Reconsideration Rule] and 'if' [EPA] thereafter were to reimpose its standards, is little different from the prospect that any litigant could be injured 'if' EPA . . . were eventually to enact a rule it presently had under consideration." *Chamber of Commerce of U.S.*, 642 F.3d at

21

199; *see also Allied Home Mortg. Corp. v. U.S. Dep't of Hous. & Urban Dev.*, 618 F. App'x 781, 787 (5th Cir. 2015) (concluding that challenges to an order suspending petitioners from doing business with the government were mooted when the agency withdrew the suspension, and rejecting speculative argument that pending investigations or administrative proceedings that could result in similar suspensions were sufficient to create a live controversy).

Moreover, any future action by a court or EPA resulting in a change to the Reconsideration Rule would provide UWAG with an opportunity to seek legal redress of any new claims that it may wish to assert at that time. If any litigation challenging the Reconsideration Rule were successful, such that a court were to vacate provisions of the Reconsideration Rule, the Clean Water Act provides that UWAG could petition for judicial review based on those after-arising grounds. *See* 33 U.S.C. § 1369(b)(1) (authorizing legal challenges to EPA rules after the statutory 120-day period for seeking judicial review if based on grounds arising after the 120th day); *see also Allied Home Mortg. Corp.*, 618 F. App'x at 787 (concluding that a challenge to a withdrawn agency action was moot, and observing that a "potential [] future dispute of another nature, presenting other issues" should be challenged in a new case). Similarly, if EPA were to take any additional final actions to reconsider or revise the Reconsideration Rule, such actions would be subject to notice-and-comment requirements under the APA, 5

22

U.S.C. § 553(c), as well as judicial review under 33 U.S.C. § 1369(b)(1), which would provide UWAG with ample opportunity to assert any new claims that may arise with respect to future EPA actions.

UWAG's claims challenging the 2015 ELG Rule in the Fifth Circuit have now been fully resolved. Because that litigation is no longer active, it cannot serve as a basis for UWAG's motion for transfer.

## CONCLUSION

For the reasons set forth above, Environmental Petitioners respectfully urge the Court to deny UWAG's motion for transfer.

Dated: December 23, 2020          Respectfully submitted,

*/s/ Thomas Joseph Cmar*
Thomas Joseph Cmar
Earthjustice
311 S. Wacker Dr., Ste. 1400
Chicago, IL 60606
(312) 257-9338 (phone)
(212) 918-1556 (facsimile)
tcmar@earthjustice.org

*Counsel for Clean Water Action, Sierra Club, Waterkeeper Alliance, Inc., Natural Resources Defense Council, Inc., and Center for Biological Diversity*

Hannah Connor
Center for Biological Diversity
P.O. Box 2155
St. Petersburg, FL 33731
202-681-1676 (phone)

hconnor@biologicaldiversity.org

*Counsel for Center for Biological Diversity*


Sylvia Lam
Environmental Integrity Project
1000 Vermont Ave. NW, Suite 1100
Washington DC, 20005
202-888-2701 (phone)
slam@environmentalintegrity.org

*Counsel for Environmental Integrity Project, PennEnvironment, Inc., Chesapeake Climate Action Network, and Prairie Rivers Network*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel states that this response complies with FED. R.

APP. P. 27(d)(2)(A) because it contains 5,195 words, excluding the parts exempted

by FED. R. APP. P. 32(f), as counted by a word processing system and, therefore, is

within the word limit.  This response also complies with the typeface requirements

of FED. R. APP. P. 27(d)(1)(E) because it has been prepared in a proportionally

spaced typeface in 14-point Times New Roman font.

Dated: December 23, 2020          Respectfully submitted,

                                  */s/ Thomas Joseph Cmar*
                                  Thomas Joseph Cmar

                                  *Counsel for Clean Water Action, Sierra*
                                  *Club, Waterkeeper Alliance, Inc., Natural*
                                  *Resources Defense Council, Inc., and Center*
                                  *for Biological Diversity*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 23rd day of December, 2020.

*/s/ Thomas Joseph Cmar*
Thomas Joseph Cmar

*Counsel for Clean Water Action, Sierra Club, Waterkeeper Alliance, Inc., Natural Resources Defense Council, Inc., and Center for Biological Diversity*