IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | |
|---|---|
| APPALACHIAN VOICES, *et al.*,<br><br>Petitioners,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,<br><br>Respondents. | Case No. 20-2187(L)<br>*consolidated with*<br>No. 20-2244 |

### *CLEAN WATER ACTION* PETITIONERS' RESPONSE TO RESPONDENTS' MOTION TO HOLD CASE IN ABEYANCE

Petitioners Clean Water Action, Environmental Integrity Project, Sierra Club, Waterkeeper Alliance, Inc., Natural Resources Defense Council, Inc., Center for Biological Diversity, PennEnvironment, Inc., Chesapeake Climate Action Network, and Prairie Rivers Network (collectively, "Petitioners") respectfully submit this response to the U.S. Environmental Protection Agency's ("EPA" or "the Agency") motion to hold the case in abeyance (ECF No. 62-1).

EPA's motion fails to demonstrate the need for an indefinite stay of this litigation. Instead, the Court should direct the parties to file motions to govern further proceedings no later than March 1, 2022. Further, EPA has failed to demonstrate that *any* stay of Petitioners' Endangered Species Act claim is

1

appropriate; the Court should therefore sever and establish a briefing schedule for that claim.

## I. THE COURT SHOULD LIMIT THE LENGTH OF ANY ABEYANCE TO NO MORE THAN SIX MONTHS.

Petitioners support EPA's undertaking of a rulemaking to evaluate whether more stringent limitations for toxic wastewater discharges from fossil power plants are appropriate, which appears intended to address some—though not all—of the legal and technical deficiencies of the 2020 Steam Electric Reconsideration Rule, 85 Fed. Reg. 64,650 (Oct. 13, 2020) ("2020 Rule"). However, Petitioners are concerned with the lengthy schedule that EPA has suggested for this rulemaking, as well as the possibility that further delays could result in a final rule even later than EPA currently predicts. The only specific timeframe that the Agency has currently committed to for this rulemaking is to publish a proposed rule by fall of 2022, but the timing for even that action is vague and could be delayed further. While EPA slowly moves through its process, power plants will be permitted to continue discharging hundreds of millions of pounds per year of toxic pollutants into American waterways—pollution that EPA would have required power plants

2

to eliminate had the 2020 Rule fully complied with Clean Water Act requirements.[1]

Particularly in light of these timing concerns, Petitioners do not believe that EPA has met its heavy burden to show that an indefinite abeyance of this litigation—and a potential stay of Petitioners' claims against the 2020 Rule for years on end—is necessary. Where, as here, "there is even a fair possibility" that the requested stay may cause harm to other parties, EPA has a heavy burden of demonstrating "a clear case of hardship or inequity in being required to go forward" with the litigation. *Landis v. N. Am. Co.*, 299 U.S. 248, 254-57 (1936); *see also Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.*, 761 F.2d 198, 203 n.6 (5th Cir. 1985) ("Where a discretionary stay is proposed, something close to genuine necessity should be the mother of its invocation."); *accord Basardh v. Gates*, 545 F.3d 1068, 1069 (D.C. Cir. 2008); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). EPA has not met that burden here, given the obvious prejudice to Petitioners of having their claims stayed indefinitely while EPA undertakes a years-long rulemaking with no firm deadline for completion.

---

[1] Petitioners submitted comments to EPA in 2020 that demonstrated that zero discharge requirements are achievable for both power plant wastestreams that EPA addressed in the 2020 Rule. *See* Index.2831 (ECF No. 35-3), Docket No. EPA-HQ-OW-2009-0819-8473, at 12-28.

3

Accordingly, Petitioners request that the Court grant only a six-month abeyance of this case and direct the parties to file motions to govern further proceedings no later than March 1, 2022. By that date, EPA should have completed most if not all of the analytical work needed to start drafting a proposed rule in order to submit it to the Office of Information and Regulatory Affairs of the White House Office of Management and Budget ("OMB") for review prior to publication by fall 2022.[2] If EPA is not able to report to the parties and the Court by March 1, 2022 that it has completed most or all of the analytical work necessary to publish a proposed rule by the fall, this would indicate that the Agency had already fallen behind schedule. Setting a limit on the length of the abeyance granted to EPA now would thus establish an important checkpoint for the parties and the Court to ensure that EPA's proposed rulemaking moves forward without additional delay.

---

[2] Government agencies typically allow at least 90 days for OMB review of significant proposed and final rules. *See* Exec. Order No. 12,866, § 6(b)(2), 58 Fed. Reg. 51,735, 51,742 (Oct. 4, 1993). Thus, to ensure that it was able to publish a proposed rule by fall 2022, EPA would likely need to have submitted a draft of the proposed rule to OMB for review by summer 2022. And in order to have drafted a proposed rule for OMB submission by summer 2022, EPA would likely need to have completed its analytical work in support of the proposed rule by spring 2022, to allow several months for a final decision on the proposed rule to be made by the Administrator and for the proposed rule and supporting documents to be drafted.

4

## II. EPA HAS FAILED TO JUSTIFY *ANY* STAY OF PETITIONERS' ESA CLAIM, AND THE COURT SHOULD THEREFORE SEVER AND SET A SCHEDULE FOR BRIEFING THAT CLAIM.

Again, Petitioners support EPA's undertaking a rulemaking to reconsider whether the Clean Water Act requires "more stringent limitations than those in the 2020 Rule" for wastewater discharges from steam electric power plants into American waterways. ECF No. 62-3, at 6. EPA has offered no indication, however, that it intends to reconsider in the new rulemaking the Agency's decision not to engage in consultation under Section 7 of the Endangered Species Act ("ESA"), 16 U.S.C. § 1536(a)(2), as required to comply with the Act's requirements to consider the harmful impacts that power plant wastewater discharges have on threatened and endangered species. *See* ECF Nos. 62-1, 62-2 & 62-3. EPA has long been on notice that Petitioners seek to raise this issue, including through Petitioners' 2020 comments to EPA during the rulemaking, *see* Index.2831 (ECF No. 35-3), Docket No. EPA-HQ-OW-2009-0819-8473, at 126-38, Petitioners' filings in this Court, *see, e.g.*, ECF No. 19, at 2-3, and direct communications between Petitioners and EPA in conferring over EPA's motion for an abeyance. Yet EPA has been unwilling to commit to compliance with ESA consultation requirements in its planned rulemaking.

The Court should deny EPA's motion to stay Petitioners' ESA claim and instead sever the claim and set a briefing schedule. Petitioners' ESA claim presents

a pure question of law that is ripe for review, and the Court should resolve this question before EPA completes a new rulemaking. Moreover, EPA's continued failure to consult under the ESA will cause irreparable harm to threatened and endangered species throughout the country that are adversely affected by toxic water pollution from power plants.

      A.    **Petitioners' ESA Claim Presents a Pure Question of Law That Is Ripe for Review.**

First, whether EPA is required to engage in consultation under the ESA when revising effluent limitation guidelines and standards ("ELGs") for steam electric power plants, such as those at issue in the 2020 Rule, presents a pure question of law that is ripe for review. Indeed, EPA concedes that it did not engage in ESA consultation in issuing the 2020 Rule, and the Agency has taken the position that no such consultation is required because: (1) the Agency "lacks discretion to consider or account for effects on species" in issuing ELGs under the Clean Water Act;[3] and (2) private parties—here, power plants—will continue to pollute and the Agency is powerless to "influence a private activity to benefit a listed species."[4] Resolving Petitioners' challenge to those incorrect assertions of

---

[3] EPA Response to Public Comments for Revisions to the Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category, Index.2993 (ECF No. 35-3), Docket No. EPA-HQ-OW-2009-0819-9015, at 2-18.
[4] *Id.* at 2-19.

6

law does not require any additional factual development, and there is no reason to further delay resolution of a claim that is indisputably ripe for review right now.[5]

Moreover, EPA has made clear that it does not intend to revisit that rationale as part of its proposed rulemaking. EPA's approach to ESA compliance is unlikely to change absent course correction by the Court, as evidenced by the Agency's track record of failing to consult on related ELG rulemakings in 2015 and 2017,[6] in addition to the 2020 Rule. Because EPA has offered no indication that it intends to

---

[5] EPA's legal justifications for refusing to comply with the ESA are fatally flawed. The Clean Water Act provides EPA with discretion to consider various factors, including "such other factors as the Administrator deems appropriate," when establishing ELGs (such as the ones at issue here) based on the Best Available Technology Economically Achievable. 33 U.S.C. § 1314(b)(2)(B). "[I]f an agency has *any* statutory discretion over the action in question, that agency has the authority, and thus the responsibility, to comply with the ESA." *Am. Rivers v. U.S. Army Corps of Eng'rs*, 271 F. Supp. 2d 230, 251 (D.D.C. 2003) (emphasis added). Nor would ESA consultation have been a "meaningless exercise" here, as EPA has suggested. Index.2993 (ECF No. 35-3), Docket No. EPA-HQ-OW-2009-0819-9015, at 2-18. The 2020 Rule was an EPA action that weakened existing Clean Water Act regulations, thereby authorizing the continued discharge of hundreds of millions of pounds each year of highly toxic pollutants that EPA itself found are harmful to endangered species. *See* 2020 Rule, 85 Fed. Reg. at 64,696 (acknowledging that at least 194 listed species whose known habitat range overlaps with surface waters will be subject to discharges from steam electric power plants, including at least four that will be subject to increased exceedances of recommended water quality criteria in the 2021-28 timeframe due to the 2020 Rule).

[6] *See* Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category, 80 Fed. Reg. 67,838 (Nov. 3, 2015); Postponement of Certain Compliance Dates for the Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category, 82 Fed. Reg. 43,494 (Sept. 18, 2017).

revisit its decision not to engage in ESA consultation as part of its planned rulemaking, there is simply no reason (let alone any necessity) to delay resolution of this discrete question of law. *See, e.g.*, *Coastal (Bermuda) Ltd.*, 761 F.2d at 203 n.6.

      **B.    The Court Should Resolve the Question of Whether EPA Was Required to Engage in Consultation on the 2020 Rule Prior to EPA Completing a New Rulemaking.**

Second, holding Petitioners' ESA claim in abeyance for as much as three years or more—nothing suggests EPA will move more expeditiously on its planned rulemaking—will effectively deny Petitioners the practical relief of ensuring that EPA's legal errors are corrected prior to any further preventable, and potentially irreversible, harm befalling threatened and endangered species. *See Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987) ("Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.,* irreparable."); *Pac. Coast Fed'n of Fishermen's Ass'ns v. U.S. Bureau of Reclamation*, 138 F. Supp. 2d 1228, 1243 (N.D. Cal. 2001) (agency must complete consultation, otherwise the consultation process is rendered meaningless and "completely at odds with the clear mandate of the ESA, which placed a national priority on halting and reversing the trend toward species extinction"). Further, allowing this claim to be litigated now favors judicial economy, as a decision by this Court on whether consultation is required would

8

likely come in time to inform EPA's new rulemaking before it is completed and would obviate the need for Petitioners to raise the issue again in potential litigation on the new rulemaking. Nor is there any reason to believe that an order requiring EPA to engage in ESA consultation would necessarily cause further delay in the new rulemaking; given the slow schedule that EPA is planning to follow for that rulemaking, EPA should easily be able to comply with ESA consultation requirements during that timeframe if ordered to do so by the Court.[7]

### C. EPA's Continued Failure to Consult Will Cause Irreparable Harm.

Finally, EPA's proposed indefinite stay of this litigation, and the Agency's continued refusal to comply with the ESA, threaten to irreparably harm Petitioners'

---

[7] As the 2020 Rule is an action that is expected to adversely affect ESA-listed species or designated habitat, formal consultation with the U.S. Fish and Wildlife Service and National Marine Fisheries Service should have been required. Formal consultations must be completed within 90 days of initiation, unless the agencies agree upon a short extension. 50 C.F.R. § 402.14(e). A biological opinion must be delivered within 45 days thereafter, with the potential for a 10-day extension or upon consent of the applicant. *Id.* § 402.14(e), (g)(5). If, on the other hand, the action is determined to be one that is not likely to adversely affect listed species or designated critical habitat, then informal consultation may instead be appropriate. Informal consultation follows an even shorter timeframe in that it generally must be completed within 60 days of initiation and can be extended up to 120 days in total. *Id*. § 402.13(c)(2). Given these strict time limits, neither avenue should delay EPA's schedule for a new rulemaking. These processes can run in parallel to other components of the rulemaking, so long as the consultation is completed in sufficient time to be incorporated into the agency's final decision. *See generally* U.S. Fish & Wildlife Serv. & Nat'l Marine Fisheries Serv., Endangered Species Consultation Handbook, Index.2964 (ECF No. 35-3), Docket No. EPA-HQ-OW-2009-0819-8483.

9

protected interests and the environment. The ESA prohibits EPA from making any "irreversible or irretrievable" commitments that have "the effect of foreclosing the formulation" of conservation measures needed to avoid jeopardizing any listed species. 16 U.S.C. § 1536(d). To that end, the consultation process should occur at the "earliest possible time" in the process "to determine whether any action may affect listed species or critical habitat," and ultimately inform the agency's final decision. *See Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 188 (D.C. Cir. 2017) (citing 50 C.F.R. § 402.14(a)).

These requirements will be thwarted if Petitioners' ESA challenge to the 2020 Rule is held in indefinite abeyance. First, as it relates to the 2020 Rule itself, EPA has stated that it will continue to implement the 2020 Rule "while the Agency engages in rulemaking to consider more stringent requirements." ECF No. 62-3, at 5. As a result, harms to species resulting from EPA's original failure to consult under that rule will remain in effect pending the multi-year duration of its upcoming rulemaking process. For example, North America has the highest diversity of freshwater mussels in the world, but approximately 70 percent of those species are already extinct or threatened due to direct harm, water quality degradation, and other habitat concerns.[8] Given the already significant

---

[8] *See* U.S. Fish & Wildlife Service, Silent Sentinels, https://www.fws.gov/midwest/endangered/clams/mussels.html (last visited

10

endangerment threats these species face, it is particularly important that EPA consult in any new steam electric ELG rulemaking to ensure no further preventable threats befall these species. That need is punctuated by the fact that EPA itself has found that such freshwater mussel species are particularly threatened by heavy metal pollution, including by "[e]ffluent discharges from steam electric power plants" that, as EPA concedes, can "contaminate waterbody sediments." *See* EPA Benefit Cost Analysis, Index.3724 (ECF No. 35-3), Docket No. EPA-HQ-OW-2009-0819-8907, at 2-11.

Moreover, some of the areas of the country with the greatest freshwater mussel diversity are also areas with the highest number of fossil-burning power plants, which—but for EPA's 2020 Rule—would have been subject to stringent pollution discharge limitations. For example, three power plants in West Virginia—Mountaineer, Harrison, and John E. Amos—collectively discharge pollutants into the Ohio River within the range of three endangered mussels: the pink mucket, fanshell, and clubshell. *See* Index.2966 (ECF No. 35-3), Docket No. EPA-HQ-OW-2009-0819-8483, lines 118-20, 142-44, 195. Other facilities, such as

---

Aug. 20, 2021); Haag & Williams, Biodiversity on the brink: An assessment of conservation strategies for North American freshwater mussels, 735 *Hydrobiologia* 45, 46 (2014), https://link.springer.com/article/10.1007%2Fs10750-013-1524-7 (identifying that "[a]bout 30 North American taxa has become extinct in the last 100 years and 65% of remaining species are considered endangered, threatened, or vulnerable").

11

the Mill Creek power plant, discharge pollutants into portions of the Ohio River where six species of endangered mussels are found. *Id*. at line 186-89. And the Cumberland power plant, which EPA carved out a separate subcategory for (with less stringent effluent limitations) in the 2020 Rule, discharges pollutants into the Cumberland River in the potential range of the threatened rabbitsfoot mussel.[9]

EPA's 2020 Rule, which weakened pollution standards for those power plants, threatens to irreparably harm listed species or habitat in the receiving waterbodies, thereby adversely affecting Petitioners' members who use and enjoy those waterbodies for fishing, recreation, or other purposes. And EPA's proposed stay threatens to delay indefinitely the resolution of EPA's legally incorrect position that it has no authority or obligation to address those harms. The continued, real-world decline of potentially hundreds of threatened and endangered species nationwide argues strongly that this legal issue be resolved before EPA engages in another, potentially-flawed rulemaking.

Because there is no reason to believe that EPA will change its position and comply with the ESA in its new rulemaking, Petitioners respectfully request that the Court sever their ESA claim and order it to proceed to full briefing and oral

---

[9] *See* U.S. Fish & Wildlife Service, Information for Planning & Consultation, https://ecos.fws.gov/ipac/location/VUQMDSTJL5HNVITGGJRVC5OVD4/resources (last visited Aug. 20, 2021).

12

argument now, even if the Court grants EPA's requested abeyance as to the remaining claims in this case.

## CONCLUSION

For the reasons set forth above, Petitioners respectfully request that the Court grant no more than a six-month abeyance of this case and order that the parties file motions to govern further proceedings no later than March 1, 2022. Petitioners further respectfully request that the Court issue an order severing their Endangered Species Act claim from the claims being held in abeyance and set a schedule for full briefing and oral argument on that claim.

Dated: August 20, 2021

                                           Respectfully submitted,

                                           */s/ Thomas Joseph Cmar*
                                           Thomas Joseph Cmar
                                           AltmanNewman Co., LPA
                                           15 E. 8th Street, Suite 200W
                                           Cincinnati, OH  45202
                                           (513) 721-2180
                                           tcmar@environlaw.com

                                           *Counsel for Petitioners Clean Water Action,*
                                           *Sierra Club, Waterkeeper Alliance, Inc.,*
                                           *Natural Resources Defense Council, Inc.,*
                                           *and Center for Biological Diversity*

                                           */s/ Hannah Connor*
                                           Hannah Connor
                                           Center for Biological Diversity
                                           P.O. Box 2155

St. Petersburg, FL 33731
(202) 681-1676
hconnor@biologicaldiversity.org

*Counsel for Petitioner Center for Biological Diversity*


*/s/ Sylvia Lam*
Sylvia Lam
Environmental Integrity Project
1000 Vermont Ave. NW, Suite 1100
Washington DC, 20005
(202) 888-2701
slam@environmentalintegrity.org

*Counsel for Petitioners Environmental Integrity Project, PennEnvironment, Inc., Chesapeake Climate Action Network, and Prairie Rivers Network*

14

## CERTIFICATE OF COMPLIANCE

The undersigned counsel states that this response complies with FED. R. APP. P. 27(d)(2)(A) because it contains 3019 words, excluding the parts exempted by FED. R. APP. P. 32(f), as counted by a word processing system and, therefore, is within the word limit. This response also complies with the typeface requirements of FED. R. APP. P. 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface in 14-point Times New Roman font.

Dated: August 20, 2021

                                        Respectfully submitted,

                                        */s/ Thomas Joseph Cmar*
                                        Thomas Joseph Cmar

                                        *Counsel for Petitioners Clean Water Action,*
                                        *Sierra Club, Waterkeeper Alliance, Inc.,*
                                        *Natural Resources Defense Council, Inc.,*
                                        *and Center for Biological Diversity*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 20th day of August, 2021.

> */s/ Thomas Joseph Cmar*
> Thomas Joseph Cmar
>
> *Counsel for Petitioners Clean Water Action, Sierra Club, Waterkeeper Alliance, Inc., Natural Resources Defense Council, Inc., and Center for Biological Diversity*